**FILED**

**FEBRUARY 12, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 1 | ) ) ) ) | |
| Plaintiff | ) ) | CaseNo. |
| v. | ) ) | Judge |
| RENAULT ROBINSON STAFFING ASSOCIATES, ARAMARK CORP. | ) ) ) | |
| Defendant | ) ) | |

**08 C 907**

**JUDGE HIBBLER**
**MAGISTRATE JUDGE KEYS**

## COMPLAINT

Plaintiff, Service Employees International Union, Local 1 ("Local 1"), brings this action to compel Defendant Renault Robinson Staffing Associates ("Renault Robinson") and Defendant Aramark Corporation ("Aramark") to labor arbitration pursuant to the terms of their collective bargaining agreement with Local 1. In support, Local 1 states as follows:

1.      This court has jurisdiction over this matter pursuant to Section 301 of the Labor Management Relations Act (LMRA) of 1947, 29 U.S.C. § 185.

2.      Local 1 is a labor organization representing employees in an industry affecting commerce within the meaning of Section 2(5), (6) and (7) of the National Labor Relations Act (NLRA), 29 U.S.C. §§152(5), (6) and (7), and Section 301 of the LMRA, 29 U.S.C. § 185. Its principal offices are located at 111 E Wacker Drive, Chicago, Illinois, within the geographic jurisdiction of this Court.

1

3.    Defendant Renault Robinson is a corporation and an employer in an industry affecting commerce within the meaning of Section 2(2), (6) and (7) of the NLRA, 29 U.S.C. §§ 152(2), (6) and (7) and Section 301 of the LMRA, 29 U.S.C. § 185. The Company's principal office is located at 6 E. Monroe Street, Suite 1301, Chicago, Illinois 60603.

4.    Defendant Aramark is a corporation and an employer in an industry affecting commerce within the meaning of Section 2(2), (6) and (7) of the NLRA, 29 U.S.C. §§ 152(2), (6) and (7) and Section 301 of the LMRA, 29 U.S.C. § 185. The Company maintains an office at 2300 Warrenville Road, Downers Grove, Illinois 60515.

5.    At all relevant times, Defendants Renault Robinson and Aramark have engaged in business as joint employers in Cook County, Illinois, within the jurisdiction of this court.

6.    On or about April 10, 2006, Renault Robinson and Aramark entered into a collective bargaining agreement with Local 1 (true and correct copies attached hereto as Exhibits A and B, respectively), in effect from April 10, 2006 through April 5, 2009.

6.    Article XVIII, Section 1 of the 2006-2009 collective bargaining agreement, entitled "GRIEVANCE PROCEDURE AND ARBITRATION," states as follows:

> Section 1.    The procedure for handling a grievance pertaining to any difference or dispute which may arise under this Agreement shall be as follows:
>
> **STEP I**
> The aggrieved employee, accompanied by the steward, if the employee desires, shall consult with the employee's foreman or immediate supervisor. If a group of employees are involved in the grievance, the steward shall represent the employees. In any event, because it is in the best interest of all concerned that a grievance be promptly and

2

expeditiously resolved, an aggrieved employee and/or the steward of the employee or employees involved, shall present such grievance as soon as reasonably possible following the event which gives rise to its occurrence, or after such employee and/or the steward of the employee or employees involved first acquired the knowledge concerning such event.

**STEP II**

If the matter is not settled in the first step and the Union wishes to further pursue it, the grievance shall be reduced to writing and presented to the employer within thirty (30) calendar days following the event which gave rise to its occurrence or after the employee or employees involved first acquired knowledge concerning such event. The foreman or immediate supervisor, together with the aggrieved employee, the steward, and a Union Representative shall discuss the grievance with the building manager and the contractor. The building manager or contractor shall give his or her written answer within fifteen (15) calendar days after receipt of the written grievance.

**STEP III**

 If the matter is not resolved in the second step and the Union wishes to further pursue it, the Union shall within fifteen (15) calendar days follwing its receipt of the building manager's or contractor's written answer to Step II, serve a written demand for arbitration upon the Employer or where applicable, the contractor. The grievance shall thereafter be submitted to an arbitrator who shall be selected by mutual agreement of the Employer or, where applicable the contractor and the Union from the following panel (which may be added to hereafter upon agreement of the parties):

> Edwin Benn
> Steven Bierig
> Lisa Salkovitz Kohn
> Sinclair Kossof
> Martin Malin
> Arthur Malinowski
> Robert McAllister
> Robert Perkovich
> Jeanne Vonhof

 If the parties are unable to agree upon any one of the foregoing arbitrators, the parties shall alternately, strike one name from said list and the last remaining name shall be the arbitrator selected to hear and decide the grievance. The compensation of the said arbitrator shall be paid one-half (1/2) by the Employer and one-half (1/2) by the Union.

7.      On April 18, 2007, Local 1 filed a grievance against Defendants Renault Robinson and Aramark, as joint employers, under the parties' collective bargaining agreement pursuant to Article III, Section 1 and Article XVI, Section 1 of the collective bargaining agreement (Grievance No. 07-4959-I, attached hereto as Exhibit C), alleging facts showing that Renault Robinson and Aramark unjustly removed Evangela Brown from her normal work site.

8.      On or about May 9, 2007, Local 1 filed a grievance against Defendant Renault Robinson, under the parties' collective bargaining agreement pursuant to Article IV of the collective bargaining agreement (Grievance No. 07-5090-I, attached hereto as Exhibit D), alleging facts showing that Renault Robinson failed to pay Evangela Brown for one day of work on March 22, 2007.

9.      When the parties could not resolve the grievances described in ¶¶ 7 and 8, Local 1 expressed its intent to arbitrate those grievances.

9.      Defendants Renault Robinson and Aramark refuse to contact Local 1 to select an arbitrator concerning the grievances described in ¶¶ 7 and 8 above.

10.      Renault Robinson and Aramark's refusal to process the grievances described in¶¶ 7 and 8 violated the parties' collective bargaining agreement.  Renault Robinson and Aramark's refusal to adhere to the terms and conditions of that agreement violates § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

WHEREFORE, Local 1 requests that the Court enter an order compelling Defendants Renault Robinson and Aramark to arbitrate the grievance currently pending between it and Local 1 and award such other relief as the Court deems just and proper.

Respectfully submitted,                          Dated:  February 11, 2008


_____/s/ Steven M. Stewart_____

Steven M. Stewart
Associate Counsel
SEIU Local 1
111 E. Wacker Drive, 25th Floor
Chicago, IL 60601

312.233.8748
312.233.8848 (Fax)

L:\Litigation\Aramark and R. Robinson Assoc\Complaint\Compel arbitration.complaint.doc

# EXHIBIT A

# STANDARD AGREEMENT
# CONTRACTORS
# (The Chicago Park District)

## and

# SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1

# APRIL 10, 2006 through APRIL 5, 2009

## TABLE OF CONTENTS

| **Agreement** | | **Page Number** |
|---|---|---|
| Article I - | Bargaining Unit | I |
| Article II - | Union Membership, Employer Rights and Check Off | I, 2, 3 |
| Article III - | Discharge and Discipline | 4 |
| Article IV - | Wages | 4, 5, 6 |
| Article V - | Workweek | 6, 7 |
| Article VI - | Holidays | 7, 8, 9 |
| Article VII - | Vacations | 9, 10 |
| Article VIII - | Termination-Vacation Accrual-Final Paycheck | 11 |
| Article IX - | Funeral Leave | 11 |
| Article X - | Working Conditions | 12, 13 |
| Article XI - | Veteran's Rights | 14 |
| Article XII - | Health and Welfare Fund | 14, 15 |
| Article XIII - | Pension Funds | 15, 16, 17 |
| Article XIV - | Health and Welfare-Pension Delinquencies | 17, 18 |
| Article XV - | Seniority | 19, 20 |
| Article XVI - | Leaves of Absence | 20, 21 |
| Article XVII - | Strikes, Lockouts, Picketing | 21 |
| Article XVIII - | Grievance Procedure and Arbitration | 22, 23 |
| Article XIX - | Joint Committee On Safety and Security | 24 |
| Article XX - | Classifications and Earnings | 24 |
| Article XXI - | Union Activities in Buildings | 24 |
| Article XXII - | Jury Service | 24 |
| Article XXIII - | Miscellaneous Provisions | 25 |
| Part II- | Maintenance of Conditions | 25, 26, 27, 28, 29 |

## TABLE OF CONTENTS

| Agreement | Page Number |
|---|---|
| Duration -- Reopening | 30 |
| Funds Collection Policy | 31, 32, 33, 34 |

## STANDARD AGREEMENT CONTRACTORS

## (THE CHICAGO PARK DISTRICT)

### and

## SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1

### APRIL 10, 2006 through APRIL 5, 2009

**THIS AGREEMENT,** entered into by **Renault Robinson Staffing Associates** (hereafter designated as the "Employer") and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1 (hereafter designated as the "UNION"), covers wages, hours and working conditions for Janitorial employees and Working Supervisors (hereafter designated as "Employees") who are now or may hereafter be employed by the Employer.

## PART I
## ARTICLE I
## BARGAINING UNIT

The Employer recognizes the Union as the sole and exclusive representative of all Janitorial employees and working supervisors employed at the Chicago Park District buildings and facilities which are now or may hereafter be serviced by the Employer within the jurisdiction of the Union.

The Employer and employees shall not bargain independently of the Union with respect to wages, hours of employment or working conditions, as provided in this Agreement; the right to bargain on behalf of all employees is vested solely in the Union. All bargaining unit work performed within buildings covered by this Agreement shall be performed solely by employees within the bargaining unit set forth in this Agreement.

## ARTICLE II
## UNION MEMBERSHIP, EMPLOYER RIGHTS AND CHECK OFF

**Section 1.**   The Employer agrees not to discriminate against members of the Union nor to engage in unfair practices.  The right to hire and to discharge for just cause shall be vested solely in the Employer.  All present employees shall become members of this Union within thirty-one (31) days after the date hereof, and all new employees shall become members of the Union within thirty-one (31) days after being hired, or on the effective date hereof, whichever is later.

The Union agrees to accept employees as members under the same terms and conditions as other members are admitted to this Union. Subject to the above provision, all employees shall become and remain members of the Union in good standing for the duration of this Agreement as a condition of employment. The term member or members in good standing shall be limited to the payment of the initiation fees and dues uniformly required as a condition of acquiring or retaining membership and shall be a financial obligation only.

**Section 2.**    The Employer agrees to deduct in the first month of each quarter, (and prior to the 20th day of such month) from the pay of every employee, who has executed and caused to be delivered to the Employer a written assignment, the regular quarterly dues and the initiation fee of the Union, if due and owing, which are necessary to keep such employee as a member in good standing in accordance with the Constitution and Bylaws of the Union, as certified to the Employer by the Union. Where the employee, who is on check-off, has insufficient earnings during the first month of the quarter, the deductions shall be made by the Employer from the next wage payment in accordance with billings furnished by the Union.

The Employer will submit such sums in total to the Secretary-Treasurer of Local 1 no later than ten (10) days after such deduction was made. Where the employee, who is on check-off, has insufficient earnings during the first pay period, the deductions shall be made by the Employer from the next wage payment in accordance with billings furnished by the Union. With each monthly check-off record, the Employer shall give the names, social security numbers and starting dates of all employees of the Employer who performed janitorial services in the building during the preceding month including, where known, their status as temporary, extra, substitute, or regular employees.

The Employer agrees that such deductions shall constitute Trust Funds and will be forwarded by the Employer to the Union within ten (10) days after such deduction is made. Any Employer who, without a bonafide reason, intentionally fails to remit such deductions within thirty (30) days on two (2) occasions within any twelve (12) month period shall, in the event of any subsequent failure, be required to pay in addition to the delinquent amount, in the interest at the rate of two percent (2%) per month thereon, and liquidated damages at the rate of five percent (5%) per month thereon, as well as all costs incurred by the Union in recovering such delinquent amounts, including attorney and auditor fees and court costs.

The Union agrees to indemnify and save the Employer harmless from any liability incurred by reason of such deductions.

**Section 3.**    The Employer shall discharge an employee for non-payment of Union fees or dues within ten (10) days after the Employer's receipt of written notice from the Union that such employee is not in good standing. Said notice shall state that the employee has previously been given fifteen (15) days' written notice: (a) of the delinquency; (b) the amount and method of computation thereof; (c) that the employee is not in good standing; and (d) that discharge will result at the end of said fifteen (15) day period unless all arrears are paid. The Union will indemnify, defend and hold the Employer harmless against all liability, damages, claims and costs incurred by the Employer, including but not limited to court costs, judgments and attorney fees and expenses, by reason of the Employer's compliance with this Section. The Union reserves the right, at its option and at its own expense, to appear and defend all such claims whenever suit is brought against the Employer. Employee protests of discharge for alleged non-payment of Union initiation fees or dues will not be subject to the grievance procedure or arbitration.

## Section 4.    COPE CHECKOFF

The Employer agrees to deduct and transmit to SEIU Local 1, on a monthly basis, contributions to SEIU COPE deducted from the wages of employees who voluntarily authorize such deductions on the forms provided for that purpose by the Union. These transmittals shall be accompanied by a list of the names of those employees for whom such deductions have been made and the amount deducted from each employee.

**Section 5.**    The Employer, during the life of this Agreement, shall not contract for all or any part of the work being performed by employees in the bargaining unit covered by this Agreement unless all employees currently employed shall be employed by any contractor or subcontractor as a condition of any contract or subcontract granted or permitted by the Employer; provided, however, that the Employer's chosen contractor shall have the right to adjust employee work assignments and/or reduce the working force to reflect changes in cleaning specifications and occupancy within the building and/or to accomplish legitimate operating efficiencies, so long as (1) such changes or adjustments have been approved by the Employer; (2) such changes or adjustments do not result in the imposition of unreasonable work loads upon the employees of the contractor working in the building; (3) the Union is given at least 10 days prior written notice of any planned reduction in the working force; and the Union agrees that, where such conditions have been met, it shall not attempt to bar or limit the exercise of such rights by the Employer's chosen contractor in the building covered by this Agreement.

If the Employer shall, during the life of this Agreement, contract for all or any part of the work being performed by employees in the bargaining unit covered by this Agreement, it shall include in its agreement with the contractor a provision binding the contractor to observe the economic terms and conditions of this Agreement such as wages, hours and fringe benefits, and the making of reasonable arrangements to guarantee the payment of contributions due by such contractor to the Health & Welfare and Pension Funds.

## ARTICLE III
## DISCHARGE AND DISCIPLINE

**Section 1.**    Except as otherwise provided by this Agreement, no employee may be discharged, suspended, disciplined or otherwise penalized without just cause.  The Employer agrees that all discipline should be progressive, absent compelling circumstances warranting (drunkenness, fighting and insubordination), immediate termination or acceleration of disciplinary penalties.

**Section 2.**    In cases where the Employer believes that an employee's job performance has become unsatisfactory, such as when an employee is believed to be careless or excessively absent or tardy, the Employer will notify the Union, in writing, of such belief and the Union and the Employer shall cooperate in investigating the matters and taking corrective measures, if warranted.  If the Employer contemplates severe disciplinary action beyond a reprimand, then the Employer will notify the Union in writing of such belief and the Union will promptly acknowledge, in writing, receipt of such notice.  The Union need not acknowledge receipt of simple warnings or reprimands in which the Employer does not state that severe disciplinary action is contemplated.  No warnings or reprimands shall be considered for purposes of disciplinary action after twenty-four (24) months from the date of the warning or reprimand.

## ARTICLE IV
## WAGES

**Section 1.**    (a) Employees covered by this Agreement shall receive the following pay rates during the term of this Agreement:

For the period April 10, 2006 through April 8, 2007 - $13.80 per hour.

For the period April 9, 2007 through April 6, 2008 - $14.20 per hour.

For the period April 7, 2008 through April 5, 2009 - $14.55 per hour.

**(b)**    Employees who, as of the above effective dates, were receiving pay rates in excess of those provided by the previous agreement between the parties or this Agreement shall be entitled to receive the full amount of the hourly increases included in the above rates.

(c)    All other employees covered by this Agreement shall receive not less than the following rates of pay during the term of this Agreement:

During their first year of employment - $3.40 below the rate in paragraph (a).
During their 2nd year of employment - $2.90 below the rate in paragraph (a).
During their 3rd year of employment - $2.40 below the rate in paragraph (a).
During their 4th year of employment - $1.90 below the rate in paragraph (a).

After completion of their 4th year of employment, such employees shall receive the full rate of pay set forth in paragraph (a) of this Section.

(d)    The Employer agrees that it shall not attempt to effectuate wage cost reductions by discharging employees covered by paragraph (a) in order to hire replacements covered by paragraph (c). Accordingly, the total number of employees in any building receiving pay rates pursuant to paragraph (c) shall not be increased as the result of the discharge of employees pursuant to Article III, Section 2.

**Section 2.**    (a)    There shall be a premium of fifty (.50) cents per hour paid when the following work is performed.

High level work - 12 feet and over from floor level
Furniture crating and uncrating
Removal of tile affixed to the floor
Moving and storing of construction equipment and material
Exterior metal refinishing - after one hour in one day - from the first hour of work
Loading and unloading of trucks and dock labor - after 2 hours in one day-from the first hour of work
Moving furniture-after 2 hours in one day from first hour of work
Snow Removal

(b)    Demolition and initial cleanup in connection therewith shall be at a rate equal to one and one-half times the regular hourly rate.

(c)    Where an employee performs work described by in this Section for twenty (20) minutes or less per day, there shall be no adjustment in pay. Except as specifically provided herein, employees who perform work described by this Section for more than twenty (20) minutes in a day, shall be guaranteed appropriate pay therefore for a minimum of two (2) hours. No reassignments or change in duties being performed can be made for the purpose of downgrading an employee.

**Section 3.    Working Supervisors** - Janitorial working supervisors shall be paid the greater of (1) the hourly rate of the highest paid employee they supervise or their own job rate, if higher, plus the cents per hour they were over scale under the prior Agreement: or (2) a minimum of $0.20 per hour above their own job rate, or $0.20 per hour above the hourly rate of the highest paid employee they supervise, which ever is higher.  Salaried working supervisors are entitled to corresponding differentials.

**Section 4.    Call In Pay** - An employee not scheduled to work on a Saturday or Sunday who is called in to work shall be given at least four (4) hours of work.

**Section 5.    Pay Period** - Employees shall be paid at their job location twice per month, on the fifteenth of the month and on the last day of the month.  If either of these dates fall on a Saturday/Sunday, the Employer will pay the employee the preceding Friday.

**Section 6.    Vacation Replacements and Seasonal Employees**
During the term of this Agreement janitorial replacements and seasonal employees during the month of May through September, shall be paid the following hourly rates:

Summer of:    2006  $11.80 per hour
              2007  $12.20 per hour
              2008  $12.55 per hour

**ARTICLE V**
**WORKWEEK**

**Section 1.**    The workweek for employees shall be from thirty-five (35) to forty (40) hours to be worked in five (5) consecutive days.  An employee whose workweek is between thirty-five (35) and forty (40) hours as of the effective date of this Agreement shall continue to maintain such workweek.

**Section 2.**    The workday (or night) shall not exceed one (1) hour in excess of actual working time.

**Section 3.**    The Employer guarantees thirty-five (35) hours of work to regularly employed employees who are ready, willing and able to work such hours; provided, however, that Employers maintaining regular work weeks of less than 40 hours as of the effective date of this Agreement may continue to maintain such work weeks.

**Section 4.**    All work in excess of forty (40) hours in one workweek or all work in excess of the regular weekly schedule of the employee shall constitute overtime and shall be paid at the rate of one and one-half (1-1/2) times the employee's regular hourly rate.

**Section 5.**    If any Janitorial employee is required to work beyond his or her regularly scheduled hours in any day, he or she shall not be required to take compensative time off unless otherwise agreed to by the Employer and the Union, and said employee shall be paid for the extra time, except that overtime payment is not required unless the employee's total of work hours in that workweek is more than forty (40) hours, or in excess of the regular weekly schedule of the employee.

**Section 6.**    The Employer shall not unreasonably demand work in excess of regularly scheduled hours of any employee, and the refusal of an employee to work more than twenty (20) hours of such excess time in any month, shall not constitute grounds for discharge of such employee.

**Section 7.**    For the term of this Agreement the presently scheduled hours of the individual employees shall not be reduced without the written consent of the Union, but employees presently working more than forty (40) hours may, at the election of the Employer, be reduced to forty (40) hours per week.

**Section 8.**    Overtime work shall be distributed equitably among employees able and qualified to perform the needed overtime work.

**ARTICLE VI**
**HOLIDAYS**

**Section 1.**    The following days shall be observed as holidays for all employees except trainees during their first ninety (90) days of employment:

New Year's Day
Memorial Day
Fourth of July
Labor Day
Thanksgiving Day
Day after Thanksgiving Day or such other day as may be mutually acceptable to the Employer and the Union.
½ Day Christmas Eve
Christmas Day
½ Day New Year's Eve
Either Martin Luther King's Birthday, President's Day, Lincoln's Birthday, Good Friday, or such other day as may be mutually acceptable to the Employer and the Union.

  * In lieu of ½ holidays on Christmas Eve and New Year's Eve, the Employer may elect to schedule day holidays for some or all of its bargaining unit employees on Christmas Eve or on New Year's Eve.

**THE CHICAGO PARK DISTRICT 04-10-06 – 04-05-09**
7

Each employee covered by this Agreement who has completed one (1) or more full years of service with the Employer shall, in each year of employment, receive two (2) personal holidays, one on a day mutually acceptable to the Employer and the employee, and the other on the employee's birthday or another day needed by the employee provided the employee has notified the Employer of the employee's need to be absent from work at least four (4) hours in advance of the employee's scheduled starting time.

**Section 2.**    Each regular employee shall be credited with the normal number of hours at straight time in his or her shift on each of such holidays and, in the case of those holidays which fall on what would have been the employee's regular workday, such time shall be credited as time worked in computing overtime.

**Section 3.**    When a holiday falls on an employee's day off, he or she shall be credited with eight (8) hours at straight time (4 hours in the case of one-half day holiday). For employees who regularly work less than forty (40) hours per week, the credited hours shall be the number of hours of the employee's regular daily shift (1/2 that number in the case of 1/2 day holidays), excluding Saturdays or short hour shifts. Each regular part time employee shall be paid for the aforesaid holidays on a pro rata basis; that is, the percentage which said employee's hours each week represent to a forty (40) hour week.

**Section 4.**    Employees required to work on holidays shall be paid extra for such hours worked at one and one-half (1-1/2) times their regular hourly rate in addition to the holiday pay. The Employer may schedule regular night shifts either at the beginning or end (but not both) of a calendar day designated as a holiday. Employees working on one of these regular shifts will not be considered to be working on a holiday even if some of the hours worked happen to fall on the calendar day of the holiday. Night shift employees working a regular night shift which is at the beginning of the calendar holiday will be deemed to celebrate their holiday at the end of that day, and vice versa.

**Section 5.**    To be eligible to receive holiday pay, the employee must have been employed by the Employer for at least ninety (90) calendar days prior to the holiday and worked all of his or her scheduled hours on the employee's last scheduled work day before and the employee's next scheduled workday following the holiday, provided that tardiness of up to one hour or leaving work early (with the approval of the Employer) on either of such days shall not disqualify the employee from receiving holiday pay. Employees on approved leaves of absence or layoff who are otherwise eligible to receive holiday pay shall, upon their return to work, receive holiday pay for holidays occurring within ninety (90) days following their last previous day worked. Employees substituting for employees on approved leaves of absence shall not be eligible to receive holiday pay for the first ninety (90) days of said leaves of absence.

**Section 6.**    Any employee who habitually takes an extra day off in connection with the holidays provided for in this Article for reasons obviously not justified, shall be subject to a warning or reprimand, and, thereafter, to progressive discipline by the Employer.

**Section 7.**   The Union will, through its usual forms of communication and its stewards, urge all employees to provide the Employer with not less than two (2) calendar weeks' advance notice of the date upon which the employee's birthday falls.

**Section 8.**   If a regular payday falls on a holiday, employees shall be paid on the day before the holiday, and paychecks shall be dated accordingly.

## ARTICLE VII
## VACATIONS

**Section 1.**   Regular employees who have been in the service of any building continuously for:

One year, shall be given an annual vacation of one week with pay;
Two years, shall be given an annual vacation of two weeks with pay;
Six years, shall be given an annual vacation of two weeks and one day with pay;
Seven years, shall be given an annual vacation of two weeks and two days with pay;
Eight years, shall be given an annual vacation of two weeks and three days with pay;
Nine years, shall be given an annual vacation of two weeks and four days with pay;
Ten years, shall be given an annual vacation of three weeks with pay;
Eighteen years, shall be given an annual vacation of four weeks with pay.
Twenty-five years, shall be given an annual vacation of five weeks with pay.

**Section 2.**   An additional day's vacation (or one-half day in the case of one-half day holidays) shall be allowed an employee whose vacation period includes one of the holidays listed herein.

**Section 3.**   Service shall be deemed continuous notwithstanding leaves of absence for sickness, maternity or other reasons agreed to by the Employer.

**Section 4.**   A week's vacation shall be computed upon the employee's regularly scheduled weekly hours of work for the fifty-two (52) weeks preceding the employee's vacation. If an employee has worked less than fifty-two (52) weeks, such vacation shall be based upon the scheduled hours during the total number of weeks the employee has worked.

**Section 5.**    Vacation accrual shall be given to a regular employee so long as such employee is carried on the payroll of the Employer (even though no compensation is paid). No vacation accrual is to be credited to (a) temporary, extra, substitute, floater or vacation replacement employee; provided, however that any temporary, extra, substitute, floater or vacation replacement employee who has been employed either by the Employer or by the janitorial contractor performing bargaining unit work for the Employer for more than twelve (12) consecutive months shall be eligible to receive vacation benefits. Vacation accrual for such temporary, extra, substitute, floater or vacation replacement employee begins only at such time as the regular employee is dropped from the payroll or after twelve (12) consecutive months of employment by the Employer or by the janitorial contractor performing bargaining unit work for the Employer, whichever occurs first. An employee who is absent for 180 days or more shall not be eligible for paid vacation until he/she has returned to active employment for at least ninety (90) days, unless the employee is permanently disabled.

**Section 6.**    Vacation rights of employees shall not be affected by a change of ownership or management of the building so long as they remain in the employ of the new owners and managers. Any employee employed by a contractor whose employment is terminated by reason of change of contractors during the employee's first year of employment in a building shall be compensated on a prorata basis, taking into account the employee's accrued vacation and the period worked since the first or anniversary date of employment compared with the vacation to which the employee would be entitled if the employee worked the entire year.

**Section 7.**    For vacation scheduling purposes, an employee shall receive his or her vacation in accordance with seniority and in keeping with the normal vacation scheduling of the building or at such other time as may be mutually acceptable to the Employer and the employee.

**Section 8.**    Vacation checks shall be paid to the employee no later than the last scheduled day of work before the beginning of the employee's scheduled vacation.

**Section 9.**    Each regular employee shall be credited with the normal number of hours at straight time in his or her shift on each of such vacation days and, in the case of those vacation days which fall on what would have been the employee's regular work day, such time shall be credited as time worked in computing overtime.

Employees required to work on scheduled vacation day(s) shall be paid for hours worked on such days at one and one-half times their regular hourly rate in addition to vacation pay' provided, however, that the foregoing shall not apply if the Employer and employee agree to reschedule the previously scheduled day(s).

## ARTICLE VIII
## TERMINATION-VACATION ACCRUAL-FINAL PAYCHECK

**Section 1.**    Any employee who has been in the service of the Employer for more than 1 year and whose employment is terminated for any reason, shall be compensated on a pro rata basis, taking into account the employee's accrued vacation, if any, and the period worked since the first or anniversary date of employment compared with the vacation to which the employee would be entitled if the employee worked the entire year.

**Section 2.**    The Employer shall give to the employee and the Union, written notice of the reason for discharge ten (10) days prior to the effective date of the discharge, or ten (10) days' pay, in addition to all other benefits which the employee had accrued to date of discharge.  The day on which notice is given shall be excluded from the ten (10) day period. The employee may resign by giving to the Employer the same notice.  Any employee shall receive his or her final paycheck in full at the time of separation, if possible, but in any case, within five (5) days or at the next regular payday, whichever comes first.

**Section 3.**    An employee whose employment in a building is terminated after one (1) or more years of service as a direct result of demolition of such building, or its conversion to automatic elevator service and who is thereafter (within a period of 90 days) employed in another building shall be entitled to two (2) weeks vacation after one (1) year of service in such second building, and three (3) weeks vacation after five (5) years of service in such second building.  The foregoing provisions shall not affect the ten (10) years of continuous service in the previous building required for three (3) week vacations or eighteen (18) years for four (4) weeks vacation. The Union shall notify the Employer as to the vacation requirements of these employees before they are employed.

## ARTICLE IX
## FUNERAL LEAVE

The Employer agrees to pay employees covered by this Agreement for necessary absence on account of death in the immediate family, up to and including a maximum of three (3) scheduled work days at straight time, provided the employee attends the funeral.

The term "immediate family" shall mean: current spouse, parent, step parent, child, brother, sister, current father-in-law and mother-in-law, grandparent, or grandchild. In the event the employee is unable to attend the funeral, the employee shall be allowed one (1) day at straight time.  One (1) day's pay at straight time shall be given on account of death of an employee's current brother-in-law, sister-in-law, son-in-law or daughter-in-law. At the request of the Employer, the Employee shall furnish a death certificate or other acceptable verification of death and proof of relationship acceptable to the Employer.

## ARTICLE X
## WORKING CONDITIONS

**Section 1.**     If uniforms are required, it is agreed that the Employer shall, at its own expense, furnish and maintain them.  The employees on their part, agree to take good care of such uniforms and to wear them only in the course of their duties during working hours and during lunch time.  The Employer shall furnish rubbers to employees whose duties regularly require them to walk in water.  If uniforms are furnished by the Employer, the Employer shall furnish appropriate outdoor garments for snow removal or other outdoor work.

**Section 2.**     The Employer shall provide clean, sanitary locker room area and lockers, with washing facilities, soap and towels.  Each building shall provide and maintain an adequate first aid kit in the office of the building or some other central location.

**Section 3.**     The Employer shall furnish cleaning supplies in sufficient quantity and maintain all equipment in such state of repair as is required to perform the work assigned.

**Section 4.**     The Employer shall maintain comfortable working conditions and reasonable temperatures for all employees, including night crews in sealed buildings.  The Employer shall operate such heating and air conditioning equipment and/or fans, under its control, in order to maintain comfortable working temperatures in a manner consistent with the foregoing provision.   Adequate lighting shall be provided in public areas to allow employees access to the areas they are to service.

**Section 5.**     It is agreed that there shall be no limitation on the type of work now being performed by any employee.

**Section 6.**     Each Janitorial employee shall be entitled to twenty (20) minutes of paid, nonworking time per day which shall be taken in two (2) rest periods.

**Section 7.**     The Employer shall not impose an unreasonable workload upon any employee or add on any duties over a reasonable workload.  In the event an employee is absent the remaining employees may be temporarily assigned to do part of the work assignments of the absent employees but they shall not be expected to perform their regular full workloads and the extra work.  Employees shall not be directed to do part of the work assignments of the absent employees unless and until they have first been instructed verbally, or in writing, as to what portions of their regular work assignment shall not be done in order to do the extra work.  Copies of these instructions shall be provided to the steward, if applicable.  If the instruction is not given in writing or if copies thereof are not provided to the steward, any discipline imposed upon employees for failure to perform the extra work shall be rescinded.  The Employer shall either hire a temporary replacement or assign relief coverage (other than regularly-assigned cleaning employees) to perform the duties of any regularly-assigned cleaning employee whose recurring job responsibilities cannot be postponed.

**Section 8.**    No employee shall be required to perform any work under abnormally dangerous conditions, and a failure to perform work under such circumstances, shall not be considered a cause for discharge or discipline.

**Section 9.**    It is agreed that Janitorial personnel will perform all traditional Janitorial work which consists of general cleaning in and around the buildings. It is recognized that certain tasks performed by Janitorial personnel require added physical exertion, strength or dexterity. These tasks are as follows:

Heavy cleanup in connection with construction, painting and repair
Heavy trash removal
Furniture polishing
Metal polishing
High dusting with ladders
Hosing and sweeping of exterior sidewalks
Dismantling and cleaning of light fixtures
Operation of floor-type interior and exterior power machines, industrial type vacuum cleaners, and wet pickup machines
Sweeping and dry mopping of public corridors outside of normal general cleaning assignment
Washroom sanitation - hand scrubbing, hands and knees- (refers to washrooms outside of normal, general cleaning assignment)
Washing drapes
Cleaning venetian blinds (other than dusting)
Wet mopping - over 16 ounce mop
Low ladder work
Sustained washing and polishing of walls or ceilings
Marble maintenance, exclusive of washing
Interior metal refinishing
Operation of incinerators, balers and compactors
Removal of old carpeting

Janitorial personnel who have heretofore been performing routine Janitorial functions, shall not be assigned to the foregoing duties or to the duties described in Article IV, Section 2, except on an emergency basis. Provided, however, that nothing in this Agreement shall be construed to restrict or change existing building practices regarding assignment of Janitorial personnel.

**Section 10.**    The Employer shall not require medical approval because of short term illness or disability up to and including five (5) working days; provided, however, that when an employee is chronically absent, the Employer may require such medical approval.

## ARTICLE XI
## VETERAN'S RIGHTS

The reemployment rights of employees who are now or may later be in military service and the duties of the Employer in relation to them, shall be governed by the applicable provisions of Federal and State Laws.

## ARTICLE XII
## HEALTH AND WELFARE FUND

**Section 1.**    For the period April 10, 2006 through June 30, 2007, the Employer shall contribute $377.85 (three hundred seventy-seven dollars and eighty-five cents) each month on behalf of each employee on its active payroll to the Local 25 S.E.I.U. Welfare Fund; provided, however, that the Employers' contributions shall be prorated for those months in which employees begin working, cease their employment and/or remain on medical or personal leave of absence for periods in excess of those specified in Article XVI, Sections 1 and 2 and Section 5 of this Article, respectively.

**Section 2.**    For the period July 1, 2007 through June 30, 2008, the Employer shall contribute the amount of $386.52 (three hundred eighty six dollars and fifty-two cents) each month on behalf of each employee on its active payroll to the Local 25 S.E.I.U. Welfare Fund; provided, however, that the Employers' contributions shall be prorated for those months in which employees begin working, cease their employment and/or remain on medical or personal leaves of absence for periods in excess of those specified in Article XVI, Sections 1 and 2 and Section 5 of this Article respectively.

**Section 3.**    For the period July 1, 2008 through April 5, 2009, the Employer shall contribute the amount of $395.19 (three hundred ninety five dollars and nineteen cents) each month on behalf of each employee on its active payroll to the Local 25 S.E.I.U. Welfare Fund; provided, however, that the Employers' contributions shall be prorated for those months in which employees begin working, cease their employment and/or remain on medical or personal leaves of absence for periods in excess of those specified in Article XVI, Sections 1 and 2 and Section 5 of this Article, respectively.

**Section 4.**    The Employer adopts the provisions of and agrees to comply with and be bound by the Trust Agreement establishing the Local 25 SEIU Welfare Fund and all amendments thereto, and also hereby irrevocably designates as its representatives the Trustees named as employer Trustees in said Agreement, together with their successors selected in the manner therein provided, and further ratifies and approves all matters heretofore done in connection with the creation and administration of said Trust and all actions to be taken by such Trustees within the scope of their authority.

**Section 5.**    Welfare Fund payments shall be continued on eligible employees when said employees are on a medical leave of absence up to the periods provided for in Article XVI, Section 1, or beyond that period for special reasons agreed to by the Employer and the Union.  Welfare Fund payments shall be continued on eligible employees when said employees are on a personal leave of absence up to a period of ninety (90) days, or beyond that period for special reasons agreed to by the Employer and the Union. Beyond that time, the Welfare Fund payment shall be made for and on behalf of the temporary, extra, substitute, floater or vacation replacement employee, but in no event shall contributions be made for both the eligible employee and the temporary, extra, substitute, floater or vacation replacement employee; provided, however, that any temporary, extra, substitute, floater or vacation replacement employee who has been employed either by the Employer or by the janitorial contractor performing bargaining unit work for the Employer for more than twelve (12) consecutive months shall have contributions made on his/her behalf.

**Section 6.**    The Employer shall make remittances to the Welfare Fund on or before the fifteenth (15th) calendar day of the month following the month in which the work was performed.

**Section 7.**    With each report to the Welfare Fund, the Employer shall give the names, Social Security numbers and starting dates of new, regular employees and termination date of regular employees.

**Section 8.**    Payments to the Welfare Fund shall be made on the prelisted remittance forms sent to the Fund Office, or reproduced records which give all the required information in a form acceptable to the Fund.  Failure to submit the required information in a form acceptable to the Fund will result in the Employer to be deemed delinquent.

## ARTICLE XIII
## PENSION FUNDS

**Section 1.**    For the period April 10, 2006 through April 5, 2009, Employers shall contribute to the Local 25 SEIU and Participating Employers Pension Trust at the rate or twenty-six dollars ($26.00) per week for each employee regularly scheduled to work thirty (30) or more hours per week who actually work at least 50% of the employee's scheduled workweek.  In the event such employee does not work at least 50% of the employee's scheduled workweek, the Employer shall make contributions at the rate of sixty-five cents ($0.65) per hour for all hours actually worked.  For employees not meeting the aforesaid conditions, contributions shall be made at the rate of sixty-five cents ($0.65) per hour worked for employees who actually worked less than 30 hours per week. Paid holidays, paid vacations and funeral absence (up to three working days) are deemed time worked for Pension contribution purposes.

The Union and the Employer shall endeavor to have the Trustees of the Pension Fund arrange to have the employee's last Employer notified when an employee makes application for a Pension. In the event an employee works during his or her holiday or vacation, one payment to the Pension Fund is all that will be required.

**Section 2.**    The Employer adopts the provisions of and agrees to comply with and be bound by the Trust Agreement establishing said Local 25 Pension Trust and the National Pension Fund and all amendments thereto, and also hereby irrevocably designates as its representatives the Trustees named as Employer Trustees in said Agreements, together with their successors selected in the manner therein provided, and further ratifies and approves all matters heretofore done in connection with the creation and administration of said Trusts and all actions to be taken by such trustees within the scope of their authority including the authority of the Trustees to restrict the benefit provisions with respect to a new Employer group as provided by the Trust Agreements.

**Section 3.**    The Employer shall make remittances to the Pension Fund on or before the fifteenth (15th) calendar day of the month following the month in which the work was performed.

**Section 4.**    With each report to the appropriate Pension Trust, the Employer shall give the names, Social Security numbers and starting dates of new regular employees and termination dates of regular employees.

**Section 5.**    Payments to the Pension Trust shall be made on the prelisted remittance forms sent by the Fund Office, or reproduced records which give all of the required information in a form acceptable to the Fund. Failure to submit the required information in a form acceptable to the Fund will result in the Employer to be deemed delinquent.

**Section 6.**    Pension Trust payments shall be continued on eligible employees when said employees are on a medical leave of absence up to the periods provided for in Article XVI, Section 1, or beyond that period for special reasons agreed to by the Employer and the Union.

Pension Trust payments shall be continued on eligible employees when said employees are on a personal leave of absence up to a period of ninety (90) days, or beyond that period for special reason agreed to by the Employer and the Union.

Beyond that time, the Pension Fund payment shall be made for and on behalf of the temporary, extra, substitute, floater or vacation replacement employee, but in no event shall contributions be made for both the eligible employee and the temporary, extra, substitute, floater or vacation replacement employee; provided, however, that any temporary, extra, substitute, floater or vacation replacement employee who has been employed either by the Employer or by the janitorial contractor performing bargaining unit work for the Employer for more than twelve (12) consecutive months shall have contributions made on his/her behalf.

## ARTICLE XIV
## HEALTH AND WELFARE-PENSION DELINQUENCIES

**Section 1.**    Resolution of Coverage.    Any uncertainty regarding the obligation of the Employer to make contributions to the appropriate Welfare Fund or Pension Trust with respect to new buildings or new employees shall be resolved by the parties hereto.

**Section 2.**    Right to Strike.        The Employers recognize the necessity of making prompt Health and Welfare and Pension contributions to preserve the benefit standing of employees and ensure adequate funding of benefits. If an Employer remains delinquent in making payments to either the Welfare Fund or the appropriate Pension Trust for a period of 10 days after written notice of delinquency is given to the Employer, or refuses to produce payroll records in accordance with the payroll audit provisions of the Trustees' collection policy, the Union may strike the Employer to enforce such payments or production of records without regard to the no-strike clause in Article XVII or the grievance and arbitration procedure provided in Article XVIII. The delinquent Employer shall also be responsible for reimbursement to employees of wages lost because of any strike action taken by the Union under this Article.

**Section 3.    Delinquencies, Interest and Liquidated Damages.**    If the Trustees do not receive full amount of the Employer's required Welfare Fund or Pension Trust contribution and the accompanying remittance form by the dates set forth in Article XII, Section 6 and Article XIII, Section 3 with respect to which contributions are due, the Employer will be required to pay, in addition to the amount of such contribution, interest and liquidated damages at the rates specified in the Trust Agreements on the unpaid amount, as well as accountants' and attorneys' fees and court costs, if any, incurred in effecting collection.  The Employer acknowledges receipt of the Trust Agreements and represents to the Union and the Funds that it has read the interest and liquidated damages provisions and that the liquidated damages provision is a reasonable approximation of damages to the Funds which are difficult to ascertain.  Employer further acknowledges that any right of the Trustees to waive interest or liquidated damages pursuant to the collection policy described in Section 4, below, shall not modify the Employer's agreement that the maximum liquidated damages specified in the Trust are reasonable approximation of actual damages under all circumstances where the Employer is delinquent.

**Section 4.    Collection Policy.**    Employer acknowledges that the Trustees of the Funds have the Fiduciary obligation under the Employee Retirement Income Security Act of 1974 as amended ("ERISA") to ensure prompt collection of Employer contributions and the resolution of delinquencies through the use of payroll audits and other enforcement procedures.  Accordingly, the Employer hereby irrevocably designates as its representatives the Trustees named Employer Trustees of the Funds and their successors in connection with the adoption, amendment and administration of a collection policy setting forth payroll
audit and collection procedures in accordance with the terms and conditions of ERISA prohibited transaction class exemption 76-1.  Employer hereby consents to and agrees to be bound by the provisions of such collection policy, as amended, as though fully set forth in this Agreement.  A copy of the current collection policy as adopted by the Trustees is attached as Exhibit "A".

**Section 5.    Assignment of Payments to the Trust.**    Employer hereby assigns to the Funds a portion of its compensation for services rendered to building manager(s), equal to the Employer's monthly contributions to the Funds based on the most recent remittance report on file at the Funds' offices (the "Monthly Contribution").  If the trustees of either of the Funds determine that an Employer is delinquent in making full contributions to the Funds with respect to any three months (whether or not consecutive), then in addition to all other remedies available to the Funds, the Funds may present a copy of this executed collective bargaining agreement to the manager(s) and request direct payment from the manager(s) of the full Monthly Contribution.  Payment of all Monthly Contributions to the Funds will continue to be made directly to the Funds by the manager until the Employer submits a separate payment to the Funds to satisfy all delinquencies and accrued interest and liquidated damages.

## ARTICLE XV
## SENIORITY

**Section 1.**    The term "seniority" shall mean the length of service of a regular employee in a building; provided that new employees shall be considered probationary employees for the first forty-five (45) calendar days of employment.    During their probationary period, employees shall have no seniority and may be laid off or terminated at the sole discretion of the Employer and such action shall not be subject to the grievance procedure of this Agreement.    An employee's seniority rights shall not be affected by a change of ownership or management of the building so long as said employee remains in the employ of the new owners or managers.  The Employer agrees to notify the Union in writing promptly upon the consummation of any change in ownership or management of the building.  Seniority shall not be broken except by discharge for cause, resignation or layoff for more than one year (two years in the case of employees with ten (10) or more years of service).

The Employer shall post a seniority list in each building in a place accessible to all employees.  Said list shall contain the names of all employees who have seniority as provided for herein and their respective seniority date; and shall be updated quarterly including a date prior to vacation scheduling.  A copy of the seniority list shall be made available to the Union upon request.

**Section 2.**    When it becomes necessary to reduce the working force, the last person hired shall be laid off first provided the employees to be retained have the ability to be trained to perform the available work; and the employee whose job assignment has been eliminated or combined shall be placed on the job assignment held by the least senior employee whose job assignment the impacted employee is capable of performing with minimal training.  If the employee displaced by such reassignment is not the least senior employee in the building, he or she shall be placed on the job assignment held by the least senior employee in the building, provided he or she is capable of performing that job assignment with minimal training.  Employees who cannot be placed on active job assignments in accordance with the foregoing shall be laid off. If the working force is thereafter increased, employees with seniority shall be recalled in the reverse order in which they were laid off, subject to the employee's qualifications to perform the work for which they are being recalled.  The Employer shall not give less than one (1) week's notice of recall in writing to the employee's last known address.  A failure to report for work prior to expiration of such notice period, shall result in the loss of all seniority rights under this Agreement.  No notice of recall need be given in cases where the Employer and the Union agree to waive notice because it is apparent to them the particular employee will not return.

**Section 3.**     Whenever a vacancy occurs in any job covered by this Agreement, said job shall be posted for bidding in a conspicuous place and all employees may apply for the job. The posting shall contain a full description of the job duties, starting time and rate of pay. Seniority shall be the governing factor in filling the vacancy provided the employee has the ability to be trained to perform the job. For any vacancy not filled pursuant to the foregoing posting procedure, the Employer shall offer the position to qualified replacement employees who are then working in the Employer's building before hiring new employees to fill the vacancy.

**Section 4.**     Selection and preference as to the time of taking vacations shall be granted to employees on the basis of seniority, except that a building may depart from seniority in vacation scheduling where it is required in order to maintain normal operations of the building, in which event the Union shall be notified as soon as possible of the departure from seniority.

**Section 5.**     Union Stewards shall have superseniority for purposes of layoff and recall under this Article.

## ARTICLE XVI
## LEAVES OF ABSENCE

**Section 1.**     The Employer shall grant a leave of absence in writing because of illness or disability substantiated by medical approval, upon the following schedule: under one (1) year seniority, no leave;  one (1) year to three (3) years' seniority, six (6) months leave; three (3) years' to five (5) years' seniority, nine (9) months' leave; after five (5)years' seniority, one (1) year of leave. By agreement between the Employer and the Union, employment of an employee on such leave of absence may be terminated. Upon return from such leaves, the employee shall return to the assignment previously being performed by the employee or in the event such assignment no longer exists, a substantially comparable position. Once an employee exhausts the leave pursuant to the schedule set forth above, he or she is not entitled to additional leave until after having worked continuously for an additional twelve (12) months.

**Section 2.**     The Employer shall not unreasonably withhold the granting of personal leave of absence submitted and approved in writing for reasons other than illness or disability up to fourteen (14) days after two (2) years and up to ninety (90) days after five (5) years of seniority. The Employer shall not be required to grant a personal leave of absence until after twenty-one (21) months have expired since an employee's previous personal leave of absence. Failure to return to work without justifiable cause following a personal leave of absence will be grounds for termination.

**Section 3.**    An employee selected to represent the Union at conventions, conferences, collective bargaining, grievance and arbitration proceedings or for other Union business shall be granted a leave of absence for the period required to fully carry out said business.

**Section 4.**    During all such leaves of absence provided for in this Article, seniority shall continue to accumulate and accrue.  By agreement between the Employer and the Union, employment of an employee on such leave of absence may be terminated.

**Section 5.**    The provisions of the Family Medical Leave Act, where more favorable, shall supersede the provisions of this Article.

## ARTICLE XVII
## STRIKES, LOCKOUTS, PICKETING

**Section 1.**    During the term of this Agreement, there shall be no strikes, lockouts or picketing, nor shall there be any demonstrations or rallies of any kind inside any building, nor shall there be any handout or distribution of handbills or leaflets of any kind in any areas of the buildings, except janitorial breakrooms, without the Employer's consent.

**Section 2.**    No action or suit of any kind or description shall lie by the Association or any member thereof against the Union, or any officers, representative or agent thereof, because of a strike, work stoppage or picketing in violation of this Agreement if:

(a)    The Union has not authorized or instigated the strike, work stoppage or picketing, and

(b)    The Union promptly denounces such strike, work stoppage or picketing, and makes an earnest effort to terminate the same within a period of five (5) days.

**Section 3.**    Refusal of any employee to cross a picket line established or maintained by a recognized labor organization shall not be grounds for discharge or disciplinary action provided that the Union has given the Employer at least forty-eight (48) hours' advanced written notice that there is a picket line which might be honored by bargaining unit employees.

## ARTICLE XVIII
## GRIEVANCE PROCEDURE AND ARBITRATION

**Section 1.**    The procedure for handling a grievance pertaining to any difference or dispute which may arise under this Agreement shall be as follows.

## STEP I

The aggrieved employee, accompanied by the steward, if the employee desires, shall consult with the employee's foreman or immediate supervisor. If a group of employees are involved in the grievance, the steward shall represent the employees. In any event, since it is in the best interest of all concerned that a grievance be promptly and expeditiously resolved, an aggrieved employee and/or the steward of the employee or employees involved, shall present such grievance as soon as reasonably possible following the event which gives rise to its occurrence, or after such employee and/or the steward of the employee or employees involved first acquired the knowledge concerning such event.

## STEP II

If the matter is not settled in the first step and the Union wishes to further pursue it, the grievance shall be reduced to writing and presented to the building manager and, where applicable, the contractor within thirty (30) calendar days following the event which gave rise to its occurrence or after the employee or employees involved first acquired knowledge concerning such event. The foreman or immediate supervisor, together with the aggrieved employee, the steward, and a Union Representative shall discuss the grievance with the building manager and the contractor. The building manager or contractor shall give his or her written answer within fifteen (15) calendar days after receipt of the written grievance.

## STEP III

If the matter is not resolved in the second step and the Union wishes to further pursue it, the Union shall within fifteen (15) calendar days following its receipt of the building manager's or contractor's written answer to Step II, serve a written demand for arbitration upon the Employer or, where applicable, the contractor. The grievance shall thereafter be submitted to an arbitrator who shall be selected by mutual agreement of the Employer or, where applicable the contractor and the Union from the following panel (which may be added to hereafter upon agreement of the parties):

EDWIN BENN
STEVEN BIERIG
LISA SALKOVITZ KOHN
SINCLAIR KOSSOFF
MARTIN MALIN
ARTHUR MALINOWSKI
ROBERT McALLISTER
ROBERT PERKOVICH
JEANNE VONHOF

If the parties are unable to agree upon any one of the foregoing arbitrators, the parties shall alternately, strike one name from said list and the last remaining name shall be the arbitrator selected to hear and decide the grievance. The compensation of the said arbitrator shall be paid one-half (1/2) by the Employer and one-half (1/2) by the Union.

**Section 2.** The award or decision of the arbitrator shall be final and binding upon the Employer and employee(s) involved, and the Union. The arbitrator shall not have the authority to add to, subtract from or alter the provisions of this Agreement.

**Section 3.** If any Employer who is a party to this Agreement refuses to abide by an arbitration award made under this Article or refuses to abide by a written decision signed by representatives of the Employer and the Union which resolves any difference or dispute arising under this Agreement, the Union shall be relieved from the obligation of Article XVII as to such Employer.

**Section 4.** Grievances which are not presented or appealed within the time limits set forth in Section 1 shall be considered withdrawn and abandoned. If there is not a timely answer to a grievance by the building manager or contractor in the first step of the grievance procedure, the grievance shall be automatically advanced to the second step.

## ARTICLE XIX
## JOINT COMMITTEE ON SAFETY AND SECURITY

The Employer and the Union share a concern for the personal safety of the janitorial employees during their work time in the buildings and in their travel to and from their work. Accordingly, a Joint Committee on Safety and Security is established consisting of one (1) member from the Union and the Employer. Such Joint Committee will work in cooperation with appropriate City, County, State and Federal agencies in an effort to improve the security of employees during their travel to and from work and within particular buildings, in an effort to improve the security of employees at work, and to improve the relationship between Employers and the Union in dealing with problems of safety and security.

## ARTICLE XX
## CLASSIFICATIONS AND EARNINGS

Any differences or disputes which may arise with respect to the proper classification of particular employees and the earnings to which they are entitled under an established over scale practice and this Agreement, shall be subject to determination under the grievance and arbitration provisions of this Agreement.

## ARTICLE XXI
## UNION ACTIVITIES IN BUILDINGS

**Section 1.**    The Employer shall permit the posting of Union bulletins in employees' locker room and shall permit Union Stewards reasonable freedom to perform their duties during working hours. Duly accredited representatives of the Union shall have reasonable access to time cards or sign in sheets for the current day applicable to employees covered by this Agreement.

**Section 2.**    Duly accredited representatives of the Union may enter the building of the Employer during the working hours to observe working conditions and to confer with the employees under circumstances that are not disruptive to working schedules. When a Union representative enters a building during business hours, he or she will register and identify himself or herself to building security, abide by security rules and attempt to contact the night supervisor. In the event the supervisor cannot be contacted and twenty (20) minutes have elapsed, the representative of the Union may proceed to confer with an employee or employees.

## ARTICLE XXII
## JURY SERVICE

The Employer shall compensate the employee for the difference between the pay which such employee would normally receive, excluding overtime, and the amount received for jury service.

## ARTICLE XXIII
## MISCELLANEOUS PROVISIONS

**Section 1.**   If the Employer shall list job vacancies with an employment agency, the Employer shall pay all the cost and charges of such agency.

**Section 2.**   If any law now existing or hereafter enacted, or any proclamation, regulation or edict of any national or state official or agency shall invalidate any portion of this Agreement, the entire Agreement shall not thereby be invalidated and either party hereto, upon request, may reopen for negotiation of the invalidated portion.  In the event agreement thereon cannot be reached within thirty (30) days, either party may submit the matter to arbitration as herein provided.

**Section 3.**   Neither the Employer nor the Union will discriminate against applicants or employees with regard to employment, tenure or any other term or condition of employment in violation of any applicable law.   Employees and management representatives will be treated with respect and dignity by all parties in this Agreement.

**Section 4.**   Although this Agreement states essential provisions covering wages, hours and working conditions applicable to all covered employees, it does not state each privilege, rule of the shop or working condition which employees in a particular building have enjoyed under the prior agreement or the particular working conditions actually in effect in each such building.  Accordingly, it is agreed that the Employer shall not use this Agreement as a reason for reducing or eliminating a beneficial working condition, rule of the shop or privilege without first obtaining consent of the Union.

**Section 5.**   The Employer agrees that any and all benefits now granted to employees or which may be granted in the future to employees shall be continued.  No provisions of this Agreement shall be construed so as to allow a reduction in the present wages or impairment of the present working conditions of any employee covered by this Agreement.

**Section 6.**   The Employer shall promptly notify the Union of any change in the management agent of the building, or the contracting out of the work covered by this Agreement or any change of contractor and the effective date of any such change.

## PART II
## MAINTENANCE OF CONDITIONS

**Section 1.**   The Employer shall not reduce the number of employees, or man hours worked or change the starting and/or quitting time of any employee at any job location without first making written application of the Secretary-Treasurer of the Union for approval of such changes and without thereafter obtaining written consent of the Union.

## JOB LOCATION

**Section 2.**   The Employer shall not do any of the following without first making written application to the Secretary-Treasurer of the Union for approval of such changes and without thereafter obtaining written consent of the Union:

(1)   Change the job location or job assignment, either temporarily or permanently, of any employee;

(2)   Lay off any employee or reduce the number of employees or change the weekly or daily hours of any employee;

(3)   Change the starting or quitting time either temporarily or permanently, at the job location.

## NO SPEED UP

**Section 3.**   There shall be no speed up or increase in work load nor any change in work assignment where the effect is to diminish the work force or lessen the total number of hours worked at any job location without first making written application to the Secretary-Treasurer of the Union for approval of such changes and without thereafter obtaining written consent of the Union.   In the event the Employer takes over the cleaning and security of any additional space, the Employer shall not add any portion of such space to the work assignment of any employee.

## LAY OFF

**Section 4.**   In the event that the Employer desires to lay off any employee or employees for reasons such as the loss of a job or a portion of the job upon the written request of the Employer, the Union agrees to meet with the Employer and discuss the proposed lay off in good faith, if is agreed, however, that the Employer shall not lay off any employee without first obtaining the consent, in writing, of the Union.

Further, it is agreed that the Employer will submit the following information, in writing, to the Union before any discussion or action is taken on the proposed lay off:

(1)   The job location at which the proposed lay off is to occur;

(2)   A list of the employees working at the job location and the length of employment and the kind of work being performed by each employee.

(3)   A list of the employees the Employer desires to lay off;

(4)   The dated and reasons for the proposed lay off.

### Section 5.

**(1)**   If the Union has agreed, in writing, to the proposed lay off, the Employer shall give a minimum of ten (10) working days' notice to the affected employee, or may pay an amount equivalent to the employee's wages for one week in lieu of notice.  Such payment shall not be construed as payment of accrued vacations;

**(2)**   No regular, full time employee shall be laid off while there is a temporary employee working on the job location;

**(3)**   Employees on lay off from the job shall have preference in rehiring.  All laid off employees of the Employer shall have preference on the basis of seniority.

## REGISTRATION OF ALL JOB LOCATIONS

### Section 6.

**(1)**   The Employer shall furnish the Union with a written list of all jobs of the Employer, including the exact address and location of each job.  Lists shall be delivered to the Union within ten (10) days after the execution of this Agreement.

**(2)**   All additions or changes in (1) above, shall be submitted to the Union within forty-eight (48) hours after they become effective;

**(3)**   The Employer agrees to provide the following information for all job locations:

**(a)**   The number of employees and the name and job description of each employee;

**(b)**   Number of man hours worked per day and per week;

**(c)**   Starting and quitting times of each employee;

**(d)**   The wage rate of each employee;

**(e)**   The original date of employment of each employee at the particular job location.

**(4)**    Upon receipt of such information, the Union will treat the information on a confidential basis and will release it to another Employer in accordance with the provisions of this Agreement only when it has been determined that bona fide bids are being requested.

## JOB BIDDING PROCEDURES

**Section 7.**    When the Employer bids or takes over the servicing of any job location where the present employees are working under the terms of a Collective Bargaining Agreement under which this Union is signatory, the Employer agrees to do the following, in writing:

**(1)**    Contact the Secretary-Treasurer of the Union for the number of employees, number of man hours worked each day and each week, starting and quitting time of each employee and the wage rate of each employee at the job location.  The Union will furnish the requested information to the Employer in writing only.

**(2)**    Observe all of the existing conditions at the job location and specifically not lay off any employee nor transfer any employee to any other job location nor reduce the wage rate of any employee, the number of employees, the total number of hours worked per day and per week, nor change the starting or quitting time of any employee.

**(3)**    Recognize that the work time and overall employment service of each employee at the job location, including those who might be on vacation or off work because of illness, injury or authorized leave of absence, shall be considered as continuous for all purposes including seniority and sick leave and vacation benefits, so that no employee shall lose any benefits due to the change of Employer.

## CHANGE OF EMPLOYER

**Section 8.**    The Employer shall not enter into an Agreement, written or verbal, directly or indirectly that will prohibit or limit in any manner, any person's or company's right to hire the employees of the Employer, or the right of any employee to accept employment, following the termination of the service of the Employer at any job location, building or establishment.

This Agreement shall be binding not only upon the parties hereto, but also upon their respective successors, administrators, executors and assigns.  In the event an entire operation or any portion thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation or portion thereof, shall continue to be subject to the terms and conditions of this Agreement for the life thereof.

## SUBCONTRACTING

**Section 9.**   The Employer shall not subcontract any work covered by this Agreement to any employee, person or company.

## INSPECTION OF RECORDS

**Section 10.**   The Union shall have the right to conduct an investigation and an audit of the books and records of the Employer including the inspection and auditing of any books or records of the Employer at any job location, building or establishment, in order to determine whether any provisions of this Agreement are being violated.

## CONTRACT BINDING UPON EMPLOYER

**Section 11.**   The execution of this Agreement by the undersigned Employer shall be binding upon such Employer and any other divisions, associates, or associations or any person or firm, partnership, or corporation performing Janitorial, cleaning or elevator services (the subject matter of this Agreement in which the Employer has any interest, control or association or which is operated out of any office or place of business with which the Employer is connected or has an interest).

## DURATION - REOPENING

The Agreement becomes effective April 10, 2006 and shall remain in full force and effect through April 5, 2009. For its duration, the parties hereto waive further collective bargaining on all appropriate subjects of bargaining, whether or not mentioned herein except that this Agreement may be reopened for making such changes as are required by the Employee Retirement Income Security Act as subsequently construed by courts or appropriate governmental agencies.

Dated _June 30_____, _2006_

_Renault Robinson Staffing Associates_ **(EMPLOYER)**

By: _____

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1**

By: _____

**Thomas Balanoff**
**President**

**LOCAL 25 S.E.I.U. WELFARE FUND**
**LOCAL 25 S.E.I.U. & PARTICIPATING EMPLOYERS PENSION TRUST**
111 East Wacker Drive                                    Telephone:  (312) 240-1600
25th Floor                                                       Facsimile:   (312)-233-8839
Chicago, IL 60601- 4205                                   Email: McArdle@seiu25.org

Welfare Fund Trustees                                              Pension Trust Trustees

Thomas Balanoff                                                     Thomas Balanoff
Laura Garza                                                           Mona Ballenger
Stanley J. Gaynor                                                   Kenneth F. Cliff
Robert S. Graf                                                    H. Michael Kurzman
Paul A. Mertz                                                        Frank A. Maxson
Daniel R. Schlademan                                              Robert E. Quast

                                                                       Jim McArdle, CPA
                                                                       Fund Manager

# COLLECTION

# <u>POLICY</u>

# JULY, 2005

**NOTE TO CONTRIBUTING EMPLOYER:**
**KEEP THIS POLICY WITH YOUR CURRENT COLLECTIVE BARGAINING AGREEMENT**

THE CHICAGO PARK DISTRICT 04-10-06 – 04-05-09
31

## EMPLOYER CONTRIBUTION COLLECTION POLICY

1.     **Delinquencies.**   Employer contributions shall be due in the Fund's Bank Depository (lock box) on or before the due date specified in the Collective Bargaining Agreement. An Employer is delinquent with respect to a contribution if the correct amount of the Employer contribution and the appropriate remittance reports are not received by the Bank Depository established for the Fund by such date.  If the Employer pays by the due date, but the amount is less than what is required, the delinquency is the difference between the amount due and the amount paid.

 An Employer's delinquency may result in the loss of Welfare Fund eligibility for the respective employees.

2.     **Notice of Delinquency.**   After the first calendar day of each month, the Fund Office shall identify each Employer who remains delinquent as of such day.  The Fund Office shall notify each delinquent Employer of its delinquency and of the accrual of interest charges and the assessment of liquidated damages.  If the building serviced by the delinquent Employer belongs to any Building Manager's Association, the Fund Office may also inform the Association.  The Fund Office may notify the applicable Management Association and Union of all delinquencies in summary form. A summary notice may also be sent to the Local Union Representative and to the Board of Trustees. The failure of the Fund to send notice or the Employer's failure to receive notice as provided in this paragraph shall not relieve the Employer of its liability for contributions and related interest and liquidated damages.

3.     **Interest and Liquidated Damages.**    Interest and liquidated damages will be imposed on all delinquent contributions identified by the Fund Office in the manner described in paragraph 2 at the rates specified in the Trust Agreement, except as provided below.  Interest and liquidated damages will be determined from the date the contribution was due to the date payment is recorded as received by the designated bank depository.

    If the delinquency arises because the Employer failed to make a payment, interest and liquidated damages will be imposed on the total amount due. If the Employer makes a payment by the due date, but pays less than the required amount, interest and liquidated damages will be imposed on the unpaid balance of the required contribution.

    Interest and liquidated damages will accrue from the due date in the Collective Bargaining Agreement until the delinquencies have been corrected.  The accrual of interest and liquidated damages will be calculated on a daily basis.  Provisions in Collective Bargaining Agreements, that credit Employer contributions to the earliest period when the delinquent contributions are owed irrespective of the allocation shown on the Employers' remittance report apply only to the issue of the plan coverage for the affected employees and do not affect the calculation of interest and liquidated damages as set forth in this collection policy.

    Interest and the assessment of liquidated damages may be waived by the Trustees if a waiver is consistent with the Trustees' fiduciary duties under ERISA and does not result in a prohibited transaction under ERISA Section 406, provided that (a) the Employer has not been delinquent during the previous 12 months (but interest and liquidated damages may be reimposed if the Employer again becomes delinquent during the subsequent 12 months); (b) the delinquency was isolated or inadvertent; (c) the delinquency remained uncorrected for less than 30 days and resulted from a failure of data processing equipment that was beyond the control of the Employer.  Under these waiver provisions, the Trustees may waive either interest or liquidated damages or both. Interest and liquidated damages will not be waived in the event of the bankruptcy of the Employer.

4.    <u>Referrals to Fund Counsel.</u>    If a payment of a delinquency is not received within 60 days or is in excess of $10,000; the delinquency and any interest and liquidated damages attributable to such delinquency are not received within 14 days after the mailing to the Employer of the notice described in paragraph 2 above, the amounts due shall be referred to Fund Counsel for collection; provided, however, that any delinquency of less than $10,000 shall be referred to Fund Counsel in those cases in which the Employer has been repeatedly delinquent, or in other cases, when deemed in the Fund's best interest by the Trustees or the Fund Manager. By such referral, Fund Counsel will be authorized to demand from the delinquent Employer all amounts due and to file suit to collect such amount. Attorney's fees and costs incurred by the Fund with respect to any such referral shall be assessed against the delinquent Employer and added to the total delinquent amount due. Once a matter has been referred to Fund Counsel for collection, no Trustee or Fund representative shall negotiate payment terms with the Employer. If any Employer shall initiate or become the subject of a petition for bankruptcy, reorganization or liquidation, then any amounts then due from such Employer shall immediately be deemed delinquent and immediately payable and the account shall be immediately referred to Fund Counsel for collection.

5.    <u>Expired CBA.</u>  In the event a delinquency which would otherwise be referable to Fund Counsel under this Collection Policy shall arise out of employment which takes place after the expiration of the applicable collective bargaining agreement, but before an impasse in bargaining for a renewal of the collective bargaining agreement has occurred, the Fund Manager, in addition to referring the matter to Fund Counsel, may file with the National Labor Relations Board an unfair labor practice charge ("ULP charge") against the delinquent Employer, alleging a unilateral change in terms and conditions of employment. If this Fund is determined to have no standing to file such a ULP charge, the Fund Manager shall, in lieu of filing the ULP charge, notify the Local Union of the existence of the delinquency and request the Local Union to file the ULP charge.

6.    <u>Assignment.</u>    If the Fund Manager determines that an Employer is delinquent for three months (whether or not consecutive) the Trustees hereby direct the Fund Manager to seek payment of the full monthly contributions for each subsequent month directly from the building manager or managers that engage the Employer, provided the Employer has made an assignment of such future contributions to the Fund pursuant to the Collective Bargaining Agreement covering such Employer's employees. Direct payments will continue until the delinquencies for the three months have been paid by the Employer, along with any applicable interest and liquidated damages.

7.    <u>Compliance Audit.</u>    A compliance audit program of contributing Employers will be conducted in the following manner.

a.    All contributing Employers are to be audited at least once over a six-year period. Large Employers with more than 100 employees are to be audited on a random basis once every three years.

b.    Each Employer will be audited for not less than a one calendar quarter period to ascertain compliance with the terms of the Collective Bargaining Agreements. The audit period will be expanded if noncompliance is determined to be significant.

c.    The Employers to be audited will be determined from a computer-generated list of contributions made by each Employer for the fiscal year October 1st through September 30th. The Employers will be randomly selected, except that no audit shall be performed in those cases in which the Trustees determine that an audit would not be cost effective, and Employers who have been audited as a result of random selection process shall not be randomly audited more frequently then once every two years.

d.    Any Employer audit that results in a deficiency in excess of $5,000.00 or 3% of its reported contributions may be subject to audit on an annual basis.

The payroll audit procedures will be those procedures established by the Funds' independent certified public accountants.

Nothing in the aforementioned selection process will prevent payroll audits, for cause, at any time on any contributing Employer.  The following criteria shall be considered cause for performing payroll audits:

1)    The Employer's name appears as delinquent on multiple occasions; or

2)    The Employer is suspected of not reporting accurately.

The Fund will pay the cost of payroll audits unless any such audit discloses an amount due from an Employer in excess of 2% of the reported contributions for the period audited in which event the Employer shall be responsible for and shall be assessed with the cost of the audit.

When a payroll audit discloses that an Employer has not made all required contributions, the auditor shall advise the Employer of the amount found to be due and the basis for the amounts owed, including interest and liquidated damages. Interest and liquidated damages will be calculated from the date the deficiency arose to the date of the audit report for purposes of notifying the Employer of the delinquency and will continue to accrue until all amounts are paid.  If the amounts due are not paid within 14 days of the Employer's receipt of such a notice, the Trustees shall refer the matter to Fund Counsel for collection.  In the event of a referral to counsel, the Employer shall be responsible for attorney's fees and any further costs incurred in collecting the delinquent amounts, interest and liquidated damages.

8.    Dates. In the event of any inconsistency between due dates in this Policy and an applicable Collective Bargaining Agreement, the Collective Bargaining Agreement will control.

# Official SEIU Local 1 – 2006 Commercial Division Contract Summary

| Contract: | BOMA Agreement (Chicago) | Standard Agreement – Part III (Suburbs) |
|---|---|---|
| Minimum Wage Rate: | • 4/10/06: $13.80 - $.40 per hour increase<br>• 4/9/07: $14.20 - $.40 per hour increase<br>• 4/7/08: $14.55 - $.35 per hour increase<br><br>*Wages Progression Continues To Apply*<br>*Employees who receive rates above these provided are entitled to receive the full amount of increase.* | • 4/10/06: $9.70 - $.45 per hour increase<br>• 4/9/07: $10.15 - $.45 per hour increase<br>• 4/7/08: $10.55 - $.40 per hour increase<br><br>• *Employees who receive rates above these provided are entitled to receive the full amount of increase.* |
| Health & Welfare: | • 4/10/06 – 6/30/07 - $377.85 per month<br>• 7/1/07 – 6/30/08 - $386.52 per month<br>• 7/1/08 – 4/5/09 - $395.19 per month | • 4/10/06 – 6/30/06 - $297.00 per month<br>• 7/1/06 – 6/30/07 - $305.67 per month<br>• 7/1/07 – 6/30/08 - $323.00 per month<br>• 7/1/08 – 4/5/09 - $331.67 per month |
| Pension: | • 4/10/06 – 4/5/09 - $26.00 per week<br>• Hourly Rate of $.65 | • No pension requirement, except for locations that currently provide pension benefits. |
| Paid Holidays: | • Effective 4/10/06 – the employee birthday will be converted to an additional personal day. | • Effective 4/10/06 – employees will be eligible for one personal day. |
| Vacations: | • Maintain Current Benefit | • Effective 4/10/06 – employees with 25 years or more seniority will be eligible for 4 weeks of vacation. |

Contract Language Changes Includes:
• Funeral Leave
• Lay-Off Procedure
• Extra Work & Staff Reduction Procedures
• Evacuation Procedures
• BOMA Grievance Process
• As well as other non-economic issues.

## STANDARD AGREEMENT CONTRACTORS
## THE CHICAGO PARK DISTRICT
## CHANGES
## CBA DATED APRIL 10, 2006 THROUGH APRIL 5, 2009

Article II, Section 4 - COPE language, monthly
Article II, Section 5 – Employment criteria moved from Article IV
Article IV – Wage rates and increases
Article VI – Holidays
Article IX – Funeral Leave – added step relations & death certificate
Article XII – H&W – new contribution amounts and dates
Article XIII – Pension – new contribution amounts and dates
Article XV, Section 2 – Guidelines for job assignment
Article XVI, Section I – Leave of Absence entitlement
Article XVII, Section 3 – Strike notice
Article XVIII – Step III – Time limits and arbitrators

# EXHIBIT B

**STANDARD AGREEMENT
CONTRACTORS
(The Chicago Park District)**

**and**

**SERVICE EMPLOYEES INTERNATIONAL UNION,
LOCAL 1**

# APRIL 10, 2006 through APRIL 5, 2009

## TABLE OF CONTENTS

**Agreement**

| | | Page Number |
|---|---|---|
| Article I - | Bargaining Unit | I |
| Article II - | Union Membership, Employer Rights and Check Off | I, 2, 3 |
| Article III - | Discharge and Discipline | 4 |
| Article IV - | Wages | 4, 5, 6 |
| Article V - | Workweek | 6, 7 |
| Article VI - | Holidays | 7, 8, 9 |
| Article VII - | Vacations | 9, 10 |
| Article VIII - | Termination-Vacation Accrual-Final Paycheck | 11 |
| Article IX - | Funeral Leave | 11 |
| Article X - | Working Conditions | 12, 13 |
| Article XI - | Veteran's Rights | 14 |
| Article XII - | Health and Welfare Fund | 14, 15 |
| Article XIII - | Pension Funds | 15, 16, 17 |
| Article XIV - | Health and Welfare-Pension Delinquencies | 17, 18 |
| Article XV - | Seniority | 19, 20 |
| Article XVI - | Leaves of Absence | 20, 21 |
| Article XVII - | Strikes, Lockouts, Picketing | 21 |
| Article XVIII - | Grievance Procedure and Arbitration | 22, 23 |
| Article XIX - | Joint Committee On Safety and Security | 24 |
| Article XX - | Classifications and Earnings | 24 |
| Article XXI - | Union Activities in Buildings | 24 |
| Article XXII - | Jury Service | 24 |
| Article XXIII - | Miscellaneous Provisions | 25 |
| Part II- | Maintenance of Conditions | 25, 26, 27, 28, 29 |

# TABLE OF CONTENTS

**Agreement**

**Page Number**

Duration – Reopening

30

Funds Collection Policy – Exhibit "A"

31, 32, 33, 34

Comfort Station Locations – Exhibit "B"

35

# STANDARD AGREEMENT CONTRACTORS

## (THE CHICAGO PARK DISTRICT)

and

## SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1

### APRIL 10, 2006 through APRIL 5, 2009

**THIS AGREEMENT,** entered into by **Aramark Management Services, Limited Partnership** (hereafter designated as the "Employer") and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1 (hereafter designated as the "UNION"), covers wages, hours and working conditions for Janitorial employees and Working Supervisors (hereafter designated as "Employees") who are now or may hereafter be employed by the Employer.

## PART I

### ARTICLE I
### BARGAINING UNIT

The Employer recognizes the Union as the sole and exclusive representative of all Janitorial employees and working supervisors employed at the Chicago Park District buildings and facilities which are now or may hereafter be serviced by the Employer within the jurisdiction of the Union.

The Employer and employees shall not bargain independently of the Union with respect to wages, hours of employment or working conditions, as provided in this Agreement; the right to bargain on behalf of all employees is vested solely in the Union. All bargaining unit work performed within buildings covered by this Agreement as listed in Exhibit "B" shall be performed solely by employees within the bargaining unit set forth in this Agreement.

## ARTICLE II
## UNION MEMBERSHIP, EMPLOYER RIGHTS AND CHECK OFF

**Section 1.**   The Employer agrees not to discriminate against members of the Union nor to engage in unfair practices.  The right to hire and to discharge for just cause shall be vested solely in the Employer.  All present employees shall become members of this Union within thirty-one (31) days after the date hereof, and all new employees shall become members of the Union within thirty-one (31) days after being hired, or on the effective date hereof, whichever is later.

The Union agrees to accept employees as members under the same terms and conditions as other members are admitted to this Union. Subject to the above provision, all employees shall become and remain members of the Union in good standing for the duration of this Agreement as a condition of employment. The term member or members in good standing shall be limited to the payment of the initiation fees and dues uniformly required as a condition of acquiring or retaining membership and shall be a financial obligation only.

**Section 2.**    The Employer agrees to deduct in the first month of each quarter, (and prior to the 20th day of such month) from the pay of every employee, who has executed and caused to be delivered to the Employer a written assignment, the regular quarterly dues and the initiation fee of the Union, if due and owing, which are necessary to keep such employee as a member in good standing in accordance with the Constitution and Bylaws of the Union, as certified to the Employer by the Union. Where the employee, who is on check-off, has insufficient earnings during the first month of the quarter, the deductions shall be made by the Employer from the next wage payment in accordance with billings furnished by the Union.

The Employer will submit such sums in total to the Secretary-Treasurer of Local 1 no later than ten (10) days after such deduction was made. Where the employee, who is on check-off, has insufficient earnings during the first pay period, the deductions shall be made by the Employer from the next wage payment in accordance with billings furnished by the Union. With each monthly check-off record, the Employer shall give the names, social security numbers and starting dates of all employees of the Employer who performed janitorial services in the building during the preceding month including, where known, their status as temporary, extra, substitute, or regular employees.

The Employer agrees that such deductions shall constitute Trust Funds and will be forwarded by the Employer to the Union within ten (10) days after such deduction is made. Any Employer who, without a bonafide reason, intentionally fails to remit such deductions within thirty (30) days on two (2) occasions within any twelve (12) month period shall, in the event of any subsequent failure, be required to pay in addition to the delinquent amount, in the interest at the rate of two percent (2%) per month thereon, and liquidated damages at the rate of five percent (5%) per month thereon, as well as all costs incurred by the Union in recovering such delinquent amounts, including attorney and auditor fees and court costs.

The Union agrees to indemnify and save the Employer harmless from any liability incurred by reason of such deductions.

**Section 3.**    The Employer shall discharge an employee for non-payment of Union fees or dues within ten (10) days after the Employer's receipt of written notice from the Union that such employee is not in good standing.   Said notice shall state that the employee has previously been given fifteen (15) days' written notice: (a) of the delinquency; (b) the amount and method of computation thereof; (c) that the employee is not in good standing; and (d) that discharge will result at the end of said fifteen (15) day period unless all arrears are paid. The Union will indemnify, defend and hold the Employer harmless against all liability, damages, claims and costs incurred by the Employer, including but not limited to court costs, judgments and attorney fees and expenses, by reason of the Employer's compliance with this Section. The Union reserves the right, at its option and at its own expense, to appear and defend all such claims whenever suit is brought against the Employer. Employee protests of discharge for alleged non-payment of Union initiation fees or dues will not be subject to the grievance procedure or arbitration.

## Section 4.    COPE CHECKOFF

The Employer agrees to deduct and transmit to SEIU Local 1, on a monthly basis, contributions to SEIU COPE deducted from the wages of employees who voluntarily authorize such deductions on the forms provided for that purpose by the Union.  These transmittals shall be accompanied by a list of the names of those employees for whom such deductions have been made and the amount deducted from each employee.

**Section 5.**    The Employer, during the life of this Agreement, shall not contract for all or any part of the work being performed by employees in the bargaining unit covered by this Agreement unless all employees currently employed shall be employed by any contractor or subcontractor as a condition of any contract or subcontract granted or permitted by the Employer; provided, however, that the Employer's chosen contractor shall have the right to adjust employee work assignments and/or reduce the working force to reflect changes in cleaning specifications and occupancy within the building and/or to accomplish legitimate operating efficiencies, so long as (1) such changes or adjustments have been approved by the Employer; (2) such changes or adjustments do not result in the imposition of unreasonable work loads upon the employees of the contractor working in the building; (3) the Union is given at least 10 days prior written notice of any planned reduction in the working force; and the Union agrees that, where such conditions have been met, it shall not attempt to bar or limit the exercise of such rights by the Employer's chosen contractor in the building covered by this Agreement.

If the Employer shall, during the life of this Agreement, contract for all or any part of the work being performed by employees in the bargaining unit covered by this Agreement, it shall include in its agreement with the contractor a provision binding the contractor to observe the economic terms and conditions of this Agreement such as wages, hours and fringe benefits, and the making of reasonable arrangements to guarantee the payment of contributions due by such contractor to the Health & Welfare and Pension Funds.

## ARTICLE III
## DISCHARGE AND DISCIPLINE

**Section 1.**     Except as otherwise provided by this Agreement, no employee may be discharged, suspended, disciplined or otherwise penalized without just cause.  The Employer agrees that all discipline should be progressive, absent compelling circumstances warranting (drunkenness, fighting and insubordination), immediate termination or acceleration of disciplinary penalties.

**Section 2.**     In cases where the Employer believes that an employee's job performance has become unsatisfactory, such as when an employee is believed to be careless or excessively absent or tardy, the Employer will notify the Union, in writing, of such belief and the Union and the Employer shall cooperate in investigating the matters and taking corrective measures, if warranted.  If the Employer contemplates severe disciplinary action beyond a reprimand, then the Employer will notify the Union in writing of such belief and the Union will promptly acknowledge, in writing, receipt of such notice.  The Union need not acknowledge receipt of simple warnings or reprimands in which the Employer does not state that severe disciplinary action is contemplated.  No warnings or reprimands shall be considered for purposes of disciplinary action after twenty-four (24) months from the date of the warning or reprimand.

## ARTICLE IV
## WAGES

**Section 1.**     **(a)** Employees covered by this Agreement shall receive the following pay rates during the term of this Agreement:

For the period April 10, 2006 through April 8, 2007 - $13.80 per hour.

For the period April 9, 2007 through April 6, 2008 - $14.20 per hour.

For the period April 7, 2008 through April 5, 2009 - $14.55 per hour.

**(b)**     Employees who, as of the above effective dates, were receiving pay rates in excess of those provided by the previous agreement between the parties or this Agreement shall be entitled to receive the full amount of the hourly increases included in the above rates.

**(c)**    All other employees covered by this Agreement shall receive not less than the following rates of pay during the term of this Agreement:

During their first year of employment - $3.40 below the rate in paragraph (a).
During their 2nd year of employment - $2.90 below the rate in paragraph (a).
During their 3rd year of employment - $2.40 below the rate in paragraph (a).
During their 4th year of employment - $1.90 below the rate in paragraph (a).

After completion of their 4th year of employment, such employees shall receive the full rate of pay set forth in paragraph (a) of this Section.

**(d)**    The Employer agrees that it shall not attempt to effectuate wage cost reductions by discharging employees covered by paragraph (a) in order to hire replacements covered by paragraph (c). Accordingly, the total number of employees in any building receiving pay rates pursuant to paragraph (c) shall not be increased as the result of the discharge of employees pursuant to Article III, Section 2.

<u>Section 2.</u>    **(a)**    There shall be a premium of fifty (.50) cents per hour paid when the following work is performed.

High level work - 12 feet and over from floor level
Furniture crating and uncrating
Removal of tile affixed to the floor
Moving and storing of construction equipment and material
Exterior metal refinishing - after one hour in one day - from the first hour of work
Loading and unloading of trucks and dock labor - after 2 hours in one day-from the first hour of work
Moving furniture-after 2 hours in one day from first hour of work
Snow Removal

**(b)**    Demolition and initial cleanup in connection therewith shall be at a rate equal to one and one-half times the regular hourly rate.

**(c)**    Where an employee performs work described by in this Section for twenty (20) minutes or less per day, there shall be no adjustment in pay. Except as specifically provided herein, employees who perform work described by this Section for more than twenty (20) minutes in a day, shall be guaranteed appropriate pay therefore for a minimum of two (2) hours. No reassignments or change in duties being performed can be made for the purpose of downgrading an employee.

**Section 3.**    **Working Supervisors** - Janitorial working supervisors shall be paid the greater of (1) the hourly rate of the highest paid employee they supervise or their own job rate, if higher, plus the cents per hour they were over scale under the prior Agreement: or (2) a minimum of $0.20 per hour above their own job rate, or $0.20 per hour above the hourly rate of the highest paid employee they supervise, which ever is higher.  Salaried working supervisors are entitled to corresponding differentials.

**Section 4.**    **Call In Pay** - An employee not scheduled to work on a Saturday or Sunday who is called in to work shall be given at least four (4) hours of work.

**Section 5.**    **Pay Period** - Employees shall be paid at their job location twice per month, on the fifteenth of the month and on the last day of the month.  If either of these dates fall on a Saturday/Sunday, the Employer will pay the employee the preceding Friday.

**Section 6.**    **Vacation Replacements and Seasonal Employees**
During the term of this Agreement janitorial replacements and seasonal employees during the month of May through September, shall be paid the following hourly rates:

Summer of:  2006  $11.80 per hour
            2007  $12.20 per hour
            2008  $12.55 per hour

**ARTICLE V**
**WORKWEEK**

**Section 1.**    The workweek for employees shall be from thirty-five (35) to forty (40) hours to be worked in five (5) consecutive days.  An employee whose workweek is between thirty-five (35) and forty (40) hours as of the effective date of this Agreement shall continue to maintain such workweek.

**Section 2.**    The workday (or night) shall not exceed one (1) hour in excess of actual working time.

**Section 3.**    The Employer guarantees thirty-five (35) hours of work to regularly employed employees who are ready, willing and able to work such hours; provided, however, that Employers maintaining regular work weeks of less than 40 hours as of the effective date of this Agreement may continue to maintain such work weeks.

**Section 4.**    All work in excess of forty (40) hours in one workweek or all work in excess of the regular weekly schedule of the employee shall constitute overtime and shall be paid at the rate of one and one-half (1-1/2) times the employee's regular hourly rate.

**Section 5.**    If any Janitorial employee is required to work beyond his or her regularly scheduled hours in any day, he or she shall not be required to take compensative time off unless otherwise agreed to by the Employer and the Union, and said employee shall be paid for the extra time, except that overtime payment is not required unless the employee's total of work hours in that workweek is more than forty (40) hours, or in excess of the regular weekly schedule of the employee.

**Section 6.**    The Employer shall not unreasonably demand work in excess of regularly scheduled hours of any employee, and the refusal of an employee to work more than twenty (20) hours of such excess time in any month, shall not constitute grounds for discharge of such employee.

**Section 7.**    For the term of this Agreement the presently scheduled hours of the individual employees shall not be reduced without the written consent of the Union, but employees presently working more than forty (40) hours may, at the election of the Employer, be reduced to forty (40) hours per week.

**Section 8.**    Overtime work shall be distributed equitably among employees able and qualified to perform the needed overtime work.

### ARTICLE VI
### HOLIDAYS

**Section 1.**    The following days shall be observed as holidays for all employees except trainees during their first ninety (90) days of employment:

**New Year's Day**
**Memorial Day**
**Fourth of July**
**Labor Day**
**Thanksgiving Day**
**Day after Thanksgiving Day or such other day as may be mutually acceptable to the Employer and the Union.**
**½ Day Christmas Eve**
**Christmas Day**
**½ Day New Year's Eve**
**Either Martin Luther King's Birthday, President's Day, Lincoln's Birthday, Good Friday, or such other day as may be mutually acceptable to the Employer and the Union.**

* In lieu of ½ holidays on Christmas Eve and New Year's Eve, the Employer may elect to schedule day holidays for some or all of its bargaining unit employees on Christmas Eve or on New Year's Eve.

Each employee covered by this Agreement who has completed one (1) or more full years of service with the Employer shall, in each year of employment, receive two (2) personal holidays, one on a day mutually acceptable to the Employer and the employee, and the other on the employee's birthday or another day needed by the employee provided the employee has notified the Employer of the employee's need to be absent from work at least four (4) hours in advance of the employee's scheduled starting time.

**Section 2.**   Each regular employee shall be credited with the normal number of hours at straight time in his or her shift on each of such holidays and, in the case of those holidays which fall on what would have been the employee's regular workday, such time shall be credited as time worked in computing overtime.

**Section 3.**   When a holiday falls on an employee's day off, he or she shall be credited with eight (8) hours at straight time (4 hours in the case of one-half day holiday). For employees who regularly work less than forty (40) hours per week, the credited hours shall be the number of hours of the employee's regular daily shift (1/2 that number in the case of 1/2 day holidays), excluding Saturdays or short hour shifts. Each regular part time employee shall be paid for the aforesaid holidays on a pro rata basis; that is, the percentage which said employee's hours each week represent to a forty (40) hour week.

**Section 4.**   Employees required to work on holidays shall be paid extra for such hours worked at one and one-half (1-1/2) times their regular hourly rate in addition to the holiday pay. The Employer may schedule regular night shifts either at the beginning or end (but not both) of a calendar day designated as a holiday. Employees working on one of these regular shifts will not be considered to be working on a holiday even if some of the hours worked happen to fall on the calendar day of the holiday. Night shift employees working a regular night shift which is at the beginning of the calendar holiday will be deemed to celebrate their holiday at the end of that day, and vice versa.

**Section 5.**   To be eligible to receive holiday pay, the employee must have been employed by the Employer for at least ninety (90) calendar days prior to the holiday and worked all of his or her scheduled hours on the employee's last scheduled work day before and the employee's next scheduled workday following the holiday, provided that tardiness of up to one hour or leaving work early (with the approval of the Employer) on either of such days shall not disqualify the employee from receiving holiday pay. Employees on approved leaves of absence or layoff who are otherwise eligible to receive holiday pay shall, upon their return to work, receive holiday pay for holidays occurring within ninety (90) days following their last previous day worked. Employees substituting for employees on approved leaves of absence shall not be eligible to receive holiday pay for the first ninety (90) days of said leaves of absence.

**Section 6.**   Any employee who habitually takes an extra day off in connection with the holidays provided for in this Article for reasons obviously not justified, shall be subject to a warning or reprimand, and, thereafter, to progressive discipline by the Employer.

**Section 7.**   The Union will, through its usual forms of communication and its stewards, urge all employees to provide the Employer with not less than two (2) calendar weeks' advance notice of the date upon which the employee's birthday falls.

**Section 8.**   If a regular payday falls on a holiday, employees shall be paid on the day before the holiday, and paychecks shall be dated accordingly.

# ARTICLE VII
## VACATIONS

**Section 1.**   Regular employees who have been in the service of any building continuously for:

One year, shall be given an annual vacation of one week with pay;
Two years, shall be given an annual vacation of two weeks with pay;
Six years, shall be given an annual vacation of two weeks and one day with pay;
Seven years, shall be given an annual vacation of two weeks and two days with pay;
Eight years, shall be given an annual vacation of two weeks and three days with pay;
Nine years, shall be given an annual vacation of two weeks and four days with pay;
Ten years, shall be given an annual vacation of three weeks with pay;
Eighteen years, shall be given an annual vacation of four weeks with pay.
Twenty-five years, shall be given an annual vacation of five weeks with pay.

**Section 2.**   An additional day's vacation (or one-half day in the case of one-half day holidays) shall be allowed an employee whose vacation period includes one of the holidays listed herein.

**Section 3.**   Service shall be deemed continuous notwithstanding leaves of absence for sickness, maternity or other reasons agreed to by the Employer.

**Section 4.**   A week's vacation shall be computed upon the employee's regularly scheduled weekly hours of work for the fifty-two (52) weeks preceding the employee's vacation. If an employee has worked less than fifty-two (52) weeks, such vacation shall be based upon the scheduled hours during the total number of weeks the employee has worked.

**Section 5.** Vacation accrual shall be given to a regular employee so long as such employee is carried on the payroll of the Employer (even though no compensation is paid). No vacation accrual is to be credited to (a) temporary, extra, substitute, floater or vacation replacement employee; provided, however that any temporary, extra, substitute, floater or vacation replacement employee who has been employed either by the Employer or by the janitorial contractor performing bargaining unit work for the Employer for more than twelve (12) consecutive months shall be eligible to receive vacation benefits. Vacation accrual for such temporary, extra, substitute, floater or vacation replacement employee begins only at such time as the regular employee is dropped from the payroll or after twelve (12) consecutive months of employment by the Employer or by the janitorial contractor performing bargaining unit work for the Employer, whichever occurs first. An employee who is absent for 180 days or more shall not be eligible for paid vacation until he/she has returned to active employment for at least ninety (90) days, unless the employee is permanently disabled.

**Section 6.** Vacation rights of employees shall not be affected by a change of ownership or management of the building so long as they remain in the employ of the new owners and managers. Any employee employed by a contractor whose employment is terminated by reason of change of contractors during the employee's first year of employment in a building shall be compensated on a prorata basis, taking into account the employee's accrued vacation and the period worked since the first or anniversary date of employment compared with the vacation to which the employee would be entitled if the employee worked the entire year.

**Section 7.** For vacation scheduling purposes, an employee shall receive his or her vacation in accordance with seniority and in keeping with the normal vacation scheduling of the building or at such other time as may be mutually acceptable to the Employer and the employee.

**Section 8.** Vacation checks shall be paid to the employee no later than the last scheduled day of work before the beginning of the employee's's scheduled vacation.

**Section 9.** Each regular employee shall be credited with the normal number of hours at straight time in his or her shift on each of such vacation days and, in the case of those vacation days which fall on what would have been the employee's regular work day, such time shall be credited as time worked in computing overtime.

Employees required to work on scheduled vacation day(s) shall be paid for hours worked on such days at one and one-half times their regular hourly rate in addition to vacation pay; provided, however, that the foregoing shall not apply if the Employer and employee agree to reschedule the previously scheduled day(s).

## ARTICLE VIII
## TERMINATION-VACATION ACCRUAL-FINAL PAYCHECK

**Section 1.**    Any employee who has been in the service of the Employer for more than 1 year and whose employment is terminated for any reason, shall be compensated on a pro rata basis, taking into account the employee's accrued vacation, if any, and the period worked since the first or anniversary date of employment compared with the vacation to which the employee would be entitled if the employee worked the entire year.

**Section 2.**    The Employer shall give to the employee and the Union, written notice of the reason for discharge ten (10) days prior to the effective date of the discharge, or ten (10) days' pay, in addition to all other benefits which the employee had accrued to date of discharge.  The day on which notice is given shall be excluded from the ten (10) day period. The employee may resign by giving to the Employer the same notice.  Any employee shall receive his or her final paycheck in full at the time of separation, if possible, but in any case, within five (5) days or at the next regular payday, whichever comes first.

**Section 3.**    An employee whose employment in a building is terminated after one (1) or more years of service as a direct result of demolition of such building or its conversion to automatic elevator service and who is thereafter (within a period of 90 days) employed in another building shall be entitled to two (2) weeks vacation after one (1) year of service in such second building, and three (3) weeks vacation after five (5) years of service in such second building.  The foregoing provisions shall not affect the ten (10) years of continuous service in the previous building required for three (3) week vacations or eighteen (18) years for four (4) weeks vacation. The Union shall notify the Employer as to the vacation requirements of these employees before they are employed.

## ARTICLE IX
## FUNERAL LEAVE

The Employer agrees to pay employees covered by this Agreement for necessary absence on account of death in the immediate family, up to and including a maximum of three (3) scheduled work days at straight time, provided the employee attends the funeral.

The term "immediate family" shall mean: current spouse, parent, step parent, child, brother, sister, current father-in-law and mother-in-law, grandparent, or grandchild. In the event the employee is unable to attend the funeral, the employee shall be allowed one (1) day at straight time.  One (1) day's pay at straight time shall be given on account of death of an employee's current brother-in-law, sister-in-law, son-in-law or daughter-in-law. At the request of the Employer, the Employee shall furnish a death certificate or other acceptable verification of death and proof of relationship acceptable to the Employer.

## ARTICLE X
## WORKING CONDITIONS

**Section 1.**    If uniforms are required, it is agreed that the Employer shall, at its own expense, furnish and maintain them. The employees on their part, agree to take good care of such uniforms and to wear them only in the course of their duties during working hours and during lunch time. The Employer shall furnish rubbers to employees whose duties regularly require them to walk in water. If uniforms are furnished by the Employer, the Employer shall furnish appropriate outdoor garments for snow removal or other outdoor work.

**Section 2.**    The Employer shall provide clean, sanitary locker room area and lockers, with washing facilities, soap and towels. Each building shall provide and maintain an adequate first aid kit in the office of the building or some other central location.

**Section 3.**    The Employer shall furnish cleaning supplies in sufficient quantity and maintain all equipment in such state of repair as is required to perform the work assigned.

**Section 4.**    The Employer shall maintain comfortable working conditions and reasonable temperatures for all employees, including night crews in sealed buildings. The Employer shall operate such heating and air conditioning equipment and/or fans, under its control, in order to maintain comfortable working temperatures in a manner consistent with the foregoing provision. Adequate lighting shall be provided in public areas to allow employees access to the areas they are to service.

**Section 5.**    It is agreed that there shall be no limitation on the type of work now being performed by any employee.

**Section 6.**    Each Janitorial employee shall be entitled to twenty (20) minutes of paid, nonworking time per day which shall be taken in two (2) rest periods.

**Section 7.**    The Employer shall not impose an unreasonable workload upon any employee or add on any duties over a reasonable workload. In the event an employee is absent the remaining employees may be temporarily assigned to do part of the work assignments of the absent employees but they shall not be expected to perform their regular full workloads and the extra work. Employees shall not be directed to do part of the work assignments of the absent employees unless and until they have first been instructed verbally, or in writing, as to what portions of their regular work assignment shall not be done in order to do the extra work. Copies of these instructions shall be provided to the steward, if applicable. If the instruction is not given in writing or if copies thereof are not provided to the steward, any discipline imposed upon employees for failure to perform the extra work shall be rescinded. The Employer shall either hire a temporary replacement or assign relief coverage (other than regularly-assigned cleaning employees) to perform the duties of any regularly-assigned cleaning employee whose recurring job responsibilities

cannot be postponed.

**Section 8.**    No employee shall be required to perform any work under abnormally dangerous conditions, and a failure to perform work under such circumstances, shall not be considered a cause for discharge or discipline.

**Section 9.**    It is agreed that Janitorial personnel will perform all traditional Janitorial work which consists of general cleaning in and around the buildings.  It is recognized that certain tasks performed by Janitorial personnel require added physical exertion, strength or dexterity.  These tasks are as follows:

Heavy cleanup in connection with construction, painting and repair
Heavy trash removal
Furniture polishing
Metal polishing
High dusting with ladders
Hosing and sweeping of exterior sidewalks
Dismantling and cleaning of light fixtures
Operation of floor-type interior and exterior power machines, industrial type vacuum cleaners, and wet pickup machines
Sweeping and dry mopping of public corridors outside of normal general cleaning assignment
Washroom sanitation - hand scrubbing, hands and knees- (refers to washrooms outside of normal, general cleaning assignment)
Washing drapes
Cleaning venetian blinds (other than dusting)
Wet mopping - over 16 ounce mop
Low ladder work
Sustained washing and polishing of walls or ceilings
Marble maintenance, exclusive of washing
Interior metal refinishing
Operation of incinerators, balers and compactors
Removal of old carpeting

Janitorial personnel who have heretofore been performing routine Janitorial functions, shall not be assigned to the foregoing duties or to the duties described in Article IV, Section 2, except on an emergency basis.  Provided, however, that nothing in this Agreement shall be construed to restrict or change existing building practices regarding assignment of Janitorial personnel.

**Section 10.**  The Employer shall not require medical approval because of short term illness or disability up to and including five (5) working days; provided, however, that when an employee is chronically absent, the Employer may require such medical approval.

## ARTICLE XI
## VETERAN'S RIGHTS

The reemployment rights of employees who are now or may later be in military service and the duties of the Employer in relation to them, shall be governed by the applicable provisions of Federal and State Laws.

## ARTICLE XII
## HEALTH AND WELFARE FUND

**Section 1.**    For the period April 10, 2006 through June 30, 2007, the Employer shall contribute $377.85 (three hundred seventy-seven dollars and eighty-five cents) each month on behalf of each employee on its active payroll to the Local 25 S.E.I.U. Welfare Fund; provided, however, that the Employers' contributions shall be prorated for those months in which employees begin working, cease their employment and/or remain on medical or personal leave of absence for periods in excess of those specified in Article XVI, Sections 1 and 2 and Section 5 of this Article, respectively.

**Section 2.**    For the period July 1, 2007 through June 30, 2008, the Employer shall contribute the amount of $386.52 (three hundred eighty six dollars and fifty-two cents) each month on behalf of each employee on its active payroll to the Local 25 S.E.I.U. Welfare Fund; provided, however, that the Employers' contributions shall be prorated for those months in which employees begin working, cease their employment and/or remain on medical or personal leaves of absence for periods in excess of those specified in Article XVI, Sections 1 and 2 and Section 5 of this Article respectively.

**Section 3.**    For the period July 1, 2008 through April 5, 2009, the Employer shall contribute the amount of $395.19 (three hundred ninety five dollars and nineteen cents) each month on behalf of each employee on its active payroll to the Local 25 S.E.I.U. Welfare Fund; provided, however, that the Employers' contributions shall be prorated for those months in which employees begin working, cease their employment and/or remain on medical or personal leaves of absence for periods in excess of those specified in Article XVI, Sections 1 and 2 and Section 5 of this Article, respectively.

**Section 4.**    The Employer adopts the provisions of and agrees to comply with and be bound by the Trust Agreement establishing the Local 25 SEIU Welfare Fund and all amendments thereto, and also hereby irrevocably designates as its representatives the Trustees named as employer Trustees in said Agreement, together with their successors selected in the manner therein provided, and further ratifies and approves all matters heretofore done in connection with the creation and administration of said Trust and all actions to be taken by such Trustees within the scope of their authority.

**Section 5.**    Welfare Fund payments shall be continued on eligible employees when said employees are on a medical leave of absence up to the periods provided for in Article XVI, Section 1, or beyond that period for special reasons agreed to by the Employer and the Union.  Welfare Fund payments shall be continued on eligible employees when said employees are on a personal leave of absence up to a period of ninety (90) days, or beyond that period for special reasons agreed to by the Employer and the Union. Beyond that time, the Welfare Fund payment shall be made for and on behalf of the temporary, extra, substitute, floater or vacation replacement employee, but in no event shall contributions be made for both the eligible employee and the temporary, extra, substitute, floater or vacation replacement employee; provided, however, that any temporary, extra, substitute, floater or vacation replacement employee who has been employed either by the Employer or by the janitorial contractor performing bargaining unit work for the Employer for more than twelve (12) consecutive months shall have contributions made on his/her behalf.

**Section 6.**    The Employer shall make remittances to the Welfare Fund on or before the fifteenth (15th) calendar day of the month following the month in which the work was performed.

**Section 7.**    With each report to the Welfare Fund, the Employer shall give the names, Social Security numbers and starting dates of new, regular employees and termination date of regular employees.

**Section 8.**    Payments to the Welfare Fund shall be made on the prelisted remittance forms sent to the Fund Office, or reproduced records which give all the required information in a form acceptable to the Fund.  Failure to submit the required information in a form acceptable to the Fund will result in the Employer to be deemed delinquent.

## ARTICLE XIII
## PENSION FUNDS

**Section 1.**    For the period April 10, 2006 through April 5, 2009, Employers shall contribute to the Local 25 SEIU and Participating Employers Pension Trust at the rate or twenty-six dollars ($26.00) per week for each employee regularly scheduled to work thirty (30) or more hours per week who actually work at least 50% of the employee's scheduled workweek.  In the event such employee does not work at least 50% of the employee's scheduled workweek, the Employer shall make contributions at the rate of sixty-five cents ($0.65) per hour for all hours actually worked.  For employees not meeting the aforesaid conditions, contributions shall be made at the rate of sixty-five cents ($0.65) per hour worked for employees who actually worked less than 30 hours per week. Paid holidays, paid vacations and funeral absence (up to three working days) are deemed time worked for Pension contribution purposes.

The Union and the Employer shall endeavor to have the Trustees of the Pension Fund arrange to have the employee's last Employer notified when an employee makes application for a Pension. In the event an employee works during his or her holiday or vacation, one payment to the Pension Fund is all that will be required.

**Section 2.**    The Employer adopts the provisions of and agrees to comply with and be bound by the Trust Agreement establishing said Local 25 Pension Trust and the National Pension Fund and all amendments thereto, and also hereby irrevocably designates as its representatives the Trustees named as Employer Trustees in said Agreements, together with their successors selected in the manner therein provided, and further ratifies and approves all matters heretofore done in connection with the creation and administration of said Trusts and all actions to be taken by such trustees within the scope of their authority including the authority of the Trustees to restrict the benefit provisions with respect to a new Employer group as provided by the Trust Agreements.

**Section 3.**    The Employer shall make remittances to the Pension Fund on or before the fifteenth (15th) calendar day of the month following the month in which the work was performed.

**Section 4.**    With each report to the appropriate Pension Trust, the Employer shall give the names, Social Security numbers and starting dates of new regular employees and termination dates of regular employees.

**Section 5.**    Payments to the Pension Trust shall be made on the prelisted remittance forms sent by the Fund Office, or reproduced records which give all of the required information in a form acceptable to the Fund. Failure to submit the required information in a form acceptable to the Fund will result in the Employer to be deemed delinquent.

**Section 6.**    Pension Trust payments shall be continued on eligible employees when said employees are on a medical leave of absence up to the periods provided for in Article XVI, Section 1, or beyond that period for special reasons agreed to by the Employer and the Union.

Pension Trust payments shall be continued on eligible employees when said employees are on a personal leave of absence up to a period of ninety (90) days, or beyond that period for special reason agreed to by the Employer and the Union.

Beyond that time, the Pension Fund payment shall be made for and on behalf of the temporary, extra, substitute, floater or vacation replacement employee, but in no event shall contributions be made for both the eligible employee and the temporary, extra, substitute, floater or vacation replacement employee; provided, however, that any temporary, extra, substitute, floater or vacation replacement employee who has been employed either by the Employer or by the janitorial contractor performing bargaining unit work for the Employer for more than twelve (12) consecutive months shall have contributions made on his/her behalf.

## ARTICLE XIV
## HEALTH AND WELFARE-PENSION DELINQUENCIES

**Section 1.**    Resolution of Coverage.    Any uncertainty regarding the obligation of the Employer to make contributions to the appropriate Welfare Fund or Pension Trust with respect to new buildings or new employees shall be resolved by the parties hereto.

**Section 2.**    Right to Strike.    The Employers recognize the necessity of making prompt Health and Welfare and Pension contributions to preserve the benefit standing of employees and ensure adequate funding of benefits. If an Employer remains delinquent in making payments to either the Welfare Fund or the appropriate Pension Trust for a period of 10 days after written notice of delinquency is given to the Employer, or refuses to produce payroll records in accordance with the payroll audit provisions of the Trustees' collection policy, the Union may strike the Employer to enforce such payments or production of records without regard to the no-strike clause in Article XVII or the grievance and arbitration procedure provided in Article XVIII. The delinquent Employer shall also be responsible for reimbursement to employees of wages lost because of any strike action taken by the Union under this Article.

**Section 3.**    Delinquencies, Interest and Liquidated Damages.    If the Trustees do not receive full amount of the Employer's required Welfare Fund or Pension Trust contribution and the accompanying remittance form by the dates set forth in Article XII, Section 6 and Article XIII, Section 3 with respect to which contributions are due, the Employer will be required to pay, in addition to the amount of such contribution, interest and liquidated damages at the rates specified in the Trust Agreements on the unpaid amount, as well as accountants' and attorneys' fees and court costs, if any, incurred in effecting collection.  The Employer acknowledges receipt of the Trust Agreements and represents to the Union and the Funds that it has read the interest and liquidated damages provisions and that the liquidated damages provision is a reasonable approximation of damages to the Funds which are difficult to ascertain.  Employer further acknowledges that any right of the Trustees to waive interest or liquidated damages pursuant to the collection policy described in Section 4, below, shall not modify the Employer's agreement that the maximum liquidated damages specified in the Trust are reasonable approximation of actual damages under all circumstances where the Employer is delinquent.

**Section 4.**    Collection Policy.    Employer acknowledges that the Trustees of the Funds have the Fiduciary obligation under the Employee Retirement Income Security Act of 1974 as amended ("ERISA") to ensure prompt collection of Employer contributions and the resolution of delinquencies through the use of payroll audits and other enforcement procedures.  Accordingly, the Employer hereby irrevocably designates as its representatives the Trustees named Employer Trustees of the Funds and their successors in connection with the adoption, amendment and administration of a collection policy setting forth payroll
audit and collection procedures in accordance with the terms and conditions of ERISA prohibited transaction class exemption 76-1.  Employer hereby consents to and agrees to be bound by the provisions of such collection policy, as amended, as though fully set forth in this Agreement.  A copy of the current collection policy as adopted by the Trustees is attached as Exhibit "A".

**Section 5.**    Assignment of Payments to the Trust.    Employer hereby assigns to the Funds a portion of its compensation for services rendered to building manager(s), equal to the Employer's monthly contributions to the Funds based on the most recent remittance report on file at the Funds' offices (the "Monthly Contribution").  If the trustees of either of the Funds determine that an Employer is delinquent in making full contributions to the Funds with respect to any three months (whether or not consecutive), then in addition to all other remedies available to the Funds, the Funds may present a copy of this executed collective bargaining agreement to the manager(s) and request direct payment from the manager(s) of the full Monthly Contribution.  Payment of all Monthly Contributions to the Funds will continue to be made directly to the Funds by the manager until the Employer submits a separate payment to the Funds to satisfy all delinquencies and accrued interest and liquidated damages.

## ARTICLE XV
## SENIORITY

**Section 1.**    The term "seniority" shall mean the length of service of a regular employee in a building; provided that new employees shall be considered probationary employees for the first forty-five (45) calendar days of employment.    During their probationary period, employees shall have no seniority and may be laid off or terminated at the sole discretion of the Employer and such action shall not be subject to the grievance procedure of this Agreement.    An employee's seniority rights shall not be affected by a change of ownership or management of the building so long as said employee remains in the employ of the new owners or managers.    The Employer agrees to notify the Union in writing promptly upon the consummation of any change in ownership or management of the building.    Seniority shall not be broken except by discharge for cause, resignation or layoff for more than one year (two years in the case of employees with ten (10) or more years of service).

The Employer shall post a seniority list in each building in a place accessible to all employees.    Said list shall contain the names of all employees who have seniority as provided for herein and their respective seniority date; and shall be updated quarterly including a date prior to vacation scheduling.    A copy of the seniority list shall be made available to the Union upon request.

**Section 2.**    When it becomes necessary to reduce the working force, the last person hired shall be laid off first provided the employees to be retained have the ability to be trained to perform the available work; and the employee whose job assignment has been eliminated or combined shall be placed on the job assignment held by the least senior employee whose job assignment the impacted employee is capable of performing with minimal training.    If the employee displaced by such reassignment is not the least senior employee in the building, he or she shall be placed on the job assignment held by the least senior employee in the building, provided he or she is capable of performing that job assignment with minimal training.    Employees who cannot be placed on active job assignments in accordance with the foregoing shall be laid off. If the working force is thereafter increased, employees with seniority shall be recalled in the reverse order in which they were laid off, subject to the employee's qualifications to perform the work for which they are being recalled. The Employer shall not give less than one (1) week's notice of recall in writing to the employee's last known address. A failure to report for work prior to expiration of such notice period, shall result in the loss of all seniority rights under this Agreement. No notice of recall need be given in cases where the Employer and the Union agree to waive notice because it is apparent to them the particular employee will not return.

**Section 3.**    Whenever a vacancy occurs in any job covered by this Agreement, said job shall be posted for bidding in a conspicuous place and all employees may apply for the job.  The posting shall contain a full description of the job duties, starting time and rate of pay.  Seniority shall be the governing factor in filling the vacancy provided the employee has the ability to be trained to perform the job.  For any vacancy not filled pursuant to the foregoing posting procedure, the Employer shall offer the position to qualified replacement employees who are then working in the Employer's building before hiring new employees to fill the vacancy.

**Section 4.**    Selection and preference as to the time of taking vacations shall be granted to employees on the basis of seniority, except that a building may depart from seniority in vacation scheduling where it is required in order to maintain normal operations of the building, in which event the Union shall be notified as soon as possible of the departure from seniority.

**Section 5.**    Union Stewards shall have superseniority for purposes of layoff and recall under this Article.

## ARTICLE XVI
## LEAVES OF ABSENCE

**Section 1.**    The Employer shall grant a leave of absence in writing because of illness or disability substantiated by medical approval, upon the following schedule: under one (1) year seniority, no leave;  one (1) year to three (3) years' seniority, six (6) months leave; three (3) years' to five (5) years' seniority, nine (9) months' leave; after five (5)years' seniority, one (1) year of leave.  By agreement between the Employer and the Union, employment of an employee on such leave of absence may be terminated.  Upon return from such leaves, the employee shall return to the assignment previously being performed by the employee or in the event such assignment no longer exists, a substantially comparable position. Once an employee exhausts the leave pursuant to the schedule set forth above, he or she is not entitled to additional leave until after having worked continuously for an additional twelve (12) months.

**Section 2.**    The Employer shall not unreasonably withhold the granting of personal leave of absence submitted and approved in writing for reasons other than illness or disability up to fourteen (14) days after two (2) years and up to ninety (90) days after five (5) years of seniority.  The Employer shall not be required to grant a personal leave of absence until after twenty-one (21) months have expired since an employee's previous personal leave of absence.  Failure to return to work without justifiable cause following a personal leave of absence will be grounds for termination.

**Section 3.**    An employee selected to represent the Union at conventions, conferences, collective bargaining, grievance and arbitration proceedings or for other Union business shall be granted a leave of absence for the period required to fully carry out said business.

**Section 4.**    During all such leaves of absence provided for in this Article, seniority shall continue to accumulate and accrue.  By agreement between the Employer and the Union, employment of an employee on such leave of absence may be terminated.

**Section 5.**    The provisions of the Family Medical Leave Act, where more favorable, shall supersede the provisions of this Article.

## ARTICLE XVII
## STRIKES, LOCKOUTS, PICKETING

**Section 1.**    During the term of this Agreement, there shall be no strikes, lockouts or picketing, nor shall there be any demonstrations or rallies of any kind inside any building, nor shall there be any handout or distribution of handbills or leaflets of any kind in any areas of the buildings, except janitorial breakrooms, without the Employer's consent.

**Section 2.**    No action or suit of any kind or description shall lie by the Association or any member thereof against the Union, or any officers, representative or agent thereof, because of a strike, work stoppage or picketing in violation of this Agreement if:

(a)    The Union has not authorized or instigated the strike, work stoppage or picketing, and

(b)    The Union promptly denounces such strike, work stoppage or picketing, and makes an earnest effort to terminate the same within a period of five (5) days.

**Section 3.**    Refusal of any employee to cross a picket line established or maintained by a recognized labor organization shall not be grounds for discharge or disciplinary action provided that the Union has given the Employer at least forty-eight (48) hours' advanced written notice that there is a picket line which might be honored by bargaining unit employees.

## ARTICLE XVIII
## GRIEVANCE PROCEDURE AND ARBITRATION

**Section 1.**     The procedure for handling a grievance pertaining to any difference or dispute which may arise under this Agreement shall be as follows.

### STEP I

The aggrieved employee, accompanied by the steward, if the employee desires, shall consult with the employee's foreman or immediate supervisor.  If a group of employees are involved in the grievance, the steward shall represent the employees.  In any event, since it is in the best interest of all concerned that a grievance be promptly and expeditiously resolved, an aggrieved employee and/or the steward of the employee or employees involved, shall present such grievance as soon as reasonably possible following the event which gives rise to its occurrence, or after such employee and/or the steward of the employee or employees involved first acquired the knowledge concerning such event.

### STEP II

If the matter is not settled in the first step and the Union wishes to further pursue it, the grievance shall be reduced to writing and presented to the building manager and, where applicable, the contractor within thirty (30) calendar days following the event which gave rise to its occurrence or after the employee or employees involved first acquired knowledge concerning such event.   The foreman or immediate supervisor, together with the aggrieved employee, the steward, and a Union Representative shall discuss the grievance with the building manager and the contractor.  The building manager or contractor shall give his or her written answer within fifteen (15) calendar days after receipt of the written grievance.

## STEP III

If the matter is not resolved in the second step and the Union wishes to further pursue it, the Union shall within fifteen (15) calendar days following its receipt of the building manager's or contractor's written answer to Step II, serve a written demand for arbitration upon the Employer or, where applicable, the contractor. The grievance shall thereafter be submitted to an arbitrator who shall be selected by mutual agreement of the Employer or, where applicable the contractor and the Union from the following panel (which may be added to hereafter upon agreement of the parties):

EDWIN BENN
STEVEN BIERIG
LISA SALKOVITZ KOHN
SINCLAIR KOSSOFF
MARTIN MALIN
ARTHUR MALINOWSKI
ROBERT McALLISTER
ROBERT PERKOVICH
JEANNE VONHOF

If the parties are unable to agree upon any one of the foregoing arbitrators, the parties shall alternately, strike one name from said list and the last remaining name shall be the arbitrator selected to hear and decide the grievance. The compensation of the said arbitrator shall be paid one-half (1/2) by the Employer and one-half (1/2) by the Union.

**Section 2.** The award or decision of the arbitrator shall be final and binding upon the Employer and employee(s) involved, and the Union. The arbitrator shall not have the authority to add to, subtract from or alter the provisions of this Agreement.

**Section 3.** If any Employer who is a party to this Agreement refuses to abide by an arbitration award made under this Article or refuses to abide by a written decision signed by representatives of the Employer and the Union which resolves any difference or dispute arising under this Agreement, the Union shall be relieved from the obligation of Article XVII as to such Employer.

**Section 4.** Grievances which are not presented or appealed within the time limits set forth in Section 1 shall be considered withdrawn and abandoned. If there is not a timely answer to a grievance by the building manager or contractor in the first step of the grievance procedure, the grievance shall be automatically advanced to the second step.

## ARTICLE XIX
## JOINT COMMITTEE ON SAFETY AND SECURITY

The Employer and the Union share a concern for the personal safety of the janitorial employees during their work time in the buildings and in their travel to and from their work. Accordingly, a Joint Committee on Safety and Security is established consisting of one (1) member from the Union and the Employer. Such Joint Committee will work in cooperation with appropriate City, County, State and Federal agencies in an effort to improve the security of employees during their travel to and from work and within particular buildings, in an effort to improve the security of employees at work, and to improve the relationship between Employers and the Union in dealing with problems of safety and security.

## ARTICLE XX
## CLASSIFICATIONS AND EARNINGS

Any differences or disputes which may arise with respect to the proper classification of particular employees and the earnings to which they are entitled under an established over scale practice and this Agreement, shall be subject to determination under the grievance and arbitration provisions of this Agreement.

## ARTICLE XXI
## UNION ACTIVITIES IN BUILDINGS

**Section 1.**    The Employer shall permit the posting of Union bulletins in employees' locker room and shall permit Union Stewards reasonable freedom to perform their duties during working hours. Duly accredited representatives of the Union shall have reasonable access to time cards or sign in sheets for the current day applicable to employees covered by this Agreement.

**Section 2.**    Duly accredited representatives of the Union may enter the building of the Employer during the working hours to observe working conditions and to confer with the employees under circumstances that are not disruptive to working schedules. When a Union representative enters a building during business hours, he or she will register and identify himself or herself to building security, abide by security rules and attempt to contact the night supervisor. In the event the supervisor cannot be contacted and twenty (20) minutes have elapsed, the representative of the Union may proceed to confer with an employee or employees.

## ARTICLE XXII
## JURY SERVICE

The Employer shall compensate the employee for the difference between the pay which such employee would normally receive, excluding overtime, and the amount received for jury service.

## ARTICLE XXIII
## MISCELLANEOUS PROVISIONS

**Section 1.**     If the Employer shall list job vacancies with an employment agency, the Employer shall pay all the cost and charges of such agency.

**Section 2.**     If any law now existing or hereafter enacted, or any proclamation, regulation or edict of any national or state official or agency shall invalidate any portion of this Agreement, the entire Agreement shall not thereby be invalidated and either party hereto, upon request, may reopen for negotiation of the invalidated portion. In the event agreement thereon cannot be reached within thirty (30) days, either party may submit the matter to arbitration as herein provided.

**Section 3.**     Neither the Employer nor the Union will discriminate against applicants or employees with regard to employment, tenure or any other term or condition of employment in violation of any applicable law.     Employees and management representatives will be treated with respect and dignity by all parties in this Agreement.

**Section 4.**     Although this Agreement states essential provisions covering wages, hours and working conditions applicable to all covered employees, it does not state each privilege, rule of the shop or working condition which employees in a particular building have enjoyed under the prior agreement or the particular working conditions actually in effect in each such building. Accordingly, it is agreed that the Employer shall not use this Agreement as a reason for reducing or eliminating a beneficial working condition, rule of the shop or privilege without first obtaining consent of the Union.

**Section 5.**     The Employer agrees that any and all benefits now granted to employees or which may be granted in the future to employees shall be continued. No provisions of this Agreement shall be construed so as to allow a reduction in the present wages or impairment of the present working conditions of any employee covered by this Agreement.

**Section 6.**     The Employer shall promptly notify the Union of any change in the management agent of the building, or the contracting out of the work covered by this Agreement or any change of contractor and the effective date of any such change.

## PART II
## MAINTENANCE OF CONDITIONS

**Section 1.**     The Employer shall not reduce the number of employees, or man hours worked or change the starting and/or quitting time of any employee at any job location without first making written application of the Secretary-Treasurer of the Union for approval of such changes and without thereafter obtaining written consent of the Union.

## JOB LOCATION

**Section 2.**    The Employer shall not do any of the following without first making written application to the Secretary-Treasurer of the Union for approval of such changes and without thereafter obtaining written consent of the Union:

(1)    Change the job location or job assignment, either temporarily or permanently, of any employee;

(2)    Lay off any employee or reduce the number of employees or change the weekly or daily hours of any employee;

(3)    Change the starting or quitting time either temporarily or permanently, at the job location.

## NO SPEED UP

**Section 3.**    There shall be no speed up or increase in work load nor any change in work assignment where the effect is to diminish the work force or lessen the total number of hours worked at any job location without first making written application to the Secretary-Treasurer of the Union for approval of such changes and without thereafter obtaining written consent of the Union.  In the event the Employer takes over the cleaning and security of any additional space, the Employer shall not add any portion of such space to the work assignment of any employee.

## LAY OFF

**Section 4.**    In the event that the Employer desires to lay off any employee or employees for reasons such as the loss of a job or a portion of the job upon the written request of the Employer, the Union agrees to meet with the Employer and discuss the proposed lay off in good faith, if is agreed, however, that the Employer shall not lay off any employee without first obtaining the consent, in writing, of the Union.

Further, it is agreed that the Employer will submit the following information, in writing, to the Union before any discussion or action is taken on the proposed lay off:

(1)    The job location at which the proposed lay off is to occur;

(2)    A list of the employees working at the job location and the length of employment and the kind of work being performed by each employee.

(3)    A list of the employees the Employer desires to lay off;

(4)    The dated and reasons for the proposed lay off.

## Section 5.

**(1)**     If the Union has agreed, in writing, to the proposed lay off, the Employer shall give a minimum of ten (10) working days' notice to the affected employee, or may pay an amount equivalent to the employee's wages for one week in lieu of notice.  Such payment shall not be construed as payment of accrued vacations;

**(2)**     No regular, full time employee shall be laid off while there is a temporary employee working on the job location;

**(3)**     Employees on lay off from the job shall have preference in rehiring. All laid off employees of the Employer shall have preference on the basis of seniority.

## REGISTRATION OF ALL JOB LOCATIONS

## Section 6.

**(1)**     The Employer shall furnish the Union with a written list of all jobs of the Employer, including the exact address and location of each job. Lists shall be delivered to the Union within ten (10) days after the execution of this Agreement.

**(2)**     All additions or changes in (1) above, shall be submitted to the Union within forty-eight (48) hours after they become effective;

**(3)**     The Employer agrees to provide the following information for all job locations:

**(a)**     The number of employees and the name and job description of each employee;

**(b)**     Number of man hours worked per day and per week;

**(c)**     Starting and quitting times of each employee;

**(d)**     The wage rate of each employee;

**(e)**     The original date of employment of each employee at the particular job location.

(4)    Upon receipt of such information, the Union will treat the information on a confidential basis and will release it to another Employer in accordance with the provisions of this Agreement only when it has been determined that bona fide bids are being requested.

## JOB BIDDING PROCEDURES

**Section 7.**    When the Employer bids or takes over the servicing of any job location where the present employees are working under the terms of a Collective Bargaining Agreement under which this Union is signatory, the Employer agrees to do the following, in writing:

(1)    Contact the Secretary-Treasurer of the Union for the number of employees, number of man hours worked each day and each week, starting and quitting time of each employee and the wage rate of each employee at the job location. The Union will furnish the requested information to the Employer in writing only.

(2)    Observe all of the existing conditions at the job location and specifically not lay off any employee nor transfer any employee to any other job location nor reduce the wage rate of any employee, the number of employees, the total number of hours worked per day and per week, nor change the starting or quitting time of any employee.

(3)    Recognize that the work time and overall employment service of each employee at the job location, including those who might be on vacation or off work because of illness, injury or authorized leave of absence, shall be considered as continuous for all purposes including seniority and sick leave and vacation benefits, so that no employee shall lose any benefits due to the change of Employer.

## CHANGE OF EMPLOYER

**Section 8.**    The Employer shall not enter into an Agreement, written or verbal, directly or indirectly that will prohibit or limit in any manner, any person's or company's right to hire the employees of the Employer, or the right of any employee to accept employment, following the termination of the service of the Employer at any job location, building or establishment.

This Agreement shall be binding not only upon the parties hereto, but also upon their respective successors, administrators, executors and assigns. In the event an entire operation or any portion thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation or portion thereof, shall continue to be subject to the terms and conditions of this Agreement for the life thereof.

## SUBCONTRACTING

**Section 9.**   The Employer shall not subcontract any work covered by this Agreement to any employee, person or company.

## INSPECTION OF RECORDS

**Section 10.**   The Union shall have the right to conduct an investigation and an audit of the books and records of the Employer including the inspection and auditing of any books or records of the Employer at any job location, building or establishment, in order to determine whether any provisions of this Agreement are being violated.

## CONTRACT BINDING UPON EMPLOYER

**Section 11.**   The execution of this Agreement by the undersigned Employer shall be binding upon such Employer and any other divisions, associates, or associations or any person or firm, partnership, or corporation performing Janitorial, cleaning or elevator services (the subject matter of this Agreement in which the Employer has any interest, control or association or which is operated out of any office or place of business with which the Employer is connected or has an interest).

## DURATION - REOPENING

The Agreement becomes effective April 10, 2006 and shall remain in full force and effect through April 5, 2009. For its duration, the parties hereto waive further collective bargaining on all appropriate subjects of bargaining, whether or not mentioned herein except that this Agreement may be reopened for making such changes as are required by the Employee Retirement Income Security Act as subsequently construed by courts or appropriate governmental agencies.

Dated _____Auc. 7_____, 2006

_____ARAMARK_____ (EMPLOYER)

By: _____

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1**

By: _____
    Thomas Balanoff, President

# EXHIBIT C

# SEIU Local 1 Grievance Form

07-4959-I

## 111 E. Wacker Dr
## Chicago, IL 60601
## FAX (312) 233-8887

**Member Name:** **EVANGELA BROWN**

**Employer:** RENAULT ROBINSON STAFFING ASSOCIATES + *ARAMARK*

**Home Address:** 2689 CONNECTIUT STR
**City, State, Zip:** GARY, IN 46407

**Work Location:** Homan Square
**Home Phone:** (219) 939-7726

**Date Filed:** 04/18/2007

**Filed By:** Ed Bowen
(312) 233-8721

## Statement of Grievance:

Ms. Brown states that she was unjustly removed from her normal work site. This is in violation of the Union contract.

## If Applicable, Contract Article(s) and Section (s) Violated:

Article III section 1 and Article XVI section 1 plus all other pertinent articles and sections.

## Remedy Requested:

Return grievant to original assignment and make him/her whole in every way.

_Evangela Brown_
Grievant's Signature

# EXHIBIT D

# SEIU Local 1 Grievance Form

07-5090-1

## 111 E. Wacker Dr
## Chicago.  IL  60601
## FAX (312) 233-8887

**Member Name :**   **EVANGELA BROWN**

**Employer :** RENAULT ROBINSON STAFFING ASSOCIATES

**Home Address:**   **2689 CONNECTIUT STR**

**City, State, Zip:**   **GARY, IN  46407**

**Work Location :**  South Shore

**Home Phone :** (219) 939-7726

**Date Filed:**   05/09/2007

**Filed By:**  Ed Bowen
(312) 233-8721

## Statement of Grievance:

Ms. Brown states that she worked the whole day on March 22, 2007 and then was never paid for the day. This is in violation of the Union contract and the Fair Labor Standards Act.

## If Applicable, Contract Article(s) and Section (s) Violated:

Article IV plus all other pertinent articles and sections.

## Remedy Requested:

Pay grievant as required by the collective bargaining agreement and make him/her whole in every way.

Post-It® Fax Note   7671

To ᴿᴱᴺᴬᵁᴸᵀ ᴿᴼᴮᴵᴺˢᴼᴺ

From  ED B.

Co./Dept.

Co.

Phone #

Phone #

Fax #  312-263-6301

Fax #

*Evangela Brown*
Grievant's Signature

Post-It® Fax Note   7671

To  DENISE RICHARDS

From  ED B.

Co./Dept.

Co.

Phone #

Phone #

Fax #  773-994-4559

Fax #